**UNITED STATES of America**

v.

**Earnest McCLAIN, Appellant.**

**No. 22652.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 9, 1970.

Decided Jan. 27, 1971.

As Amended Feb. 25, 1971, and April 9, 1971.

MacKinnon, Circuit Judge, dissented and filed opinion.

---

Messrs. Albert F. Beasley and Alexander W. Sierck, Washington, D.C. (both appointed by this Court), for appellant.

Mr. Edwin K. Hall, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee. Mr. David G. Bress, U. S. Atty. at the time the record was filed, also entered an appearance for appellee.

Before BAZELON, Chief Judge, and WRIGHT and MacKINNON, Circuit Judges.

BAZELON, Chief Judge:

Appellant was charged with second degree murder, 22 D.C.Code § 2403, for pushing his wife from the porch of a house near their home, causing injuries which resulted in death. After trial, the jury returned a verdict of manslaughter, 22 D.C.Code § 2405. Judgment of conviction was entered on October 11, 1968, and appellant was sentenced to serve two to ten years imprisonment.

On appeal, appellant raises several issues, and we find that one of these requires reversal of the conviction. In particular, we find reversible error in the admission, without cautioning instruction, of evidence of a prior act of violence committed by appellant upon his wife.

For the avowed purpose of proving malice, the prosecuting attorney offered to elicit testimony from appellant's daughter that on August 5, 1967, about seven months prior to the alleged homicide, appellant had struck his wife with a chair, causing injuries which required medical attention at a local hospital. Defense counsel objected, and the trial judge held a lengthy conference at the bench in which the legal issues were carefully explored. At the end of this conference, the trial judge noted that premeditation and deliberation were not at issue in this case and that the parties had continued to live together as husband and wife for the seven months following the incident in question. He concluded:

\* \* \* I shall not permit the Government to use any prior act of violence between this defendant and the decedent on August 5, 1968 [*sic*], in the course of this trial.

I have permitted testimony with respect to the incidents that started allegedly the night before, and presumably from the evidence, as we have heard from the evidence that there was some continuation of it several hours before this incident happened. But beyond that I will not permit the Government to go.

After this ruling, defense counsel cross-examined appellant's daughter, at one point asking whether she had seen any altercations between her parents during the day, the week, or the month before the alleged homicide.[1] Another question could be interpreted as asking whether appellant had ever hit his wife in the face. After very brief redirect and recross-examination, the trial judge himself stepped in to ask questions which brought out the chair incident of seven months before.[2] Defense counsel objected, and the trial judge replied:

I ruled, Counsel, in your favor and stated that the Government would not

1. The following are the parts of the cross-examination which deal directly with prior acts of violence:

Q. Did your mother and father fight often?
A. Yes.
Q. Now, I notice you state in here [a prior statement] you were asked this question, "Did your mother and father fight or argue often?" What did you reply?
A. The only time they fought was when he came home drunk.
Q. They didn't fight and argue then very often?
A. I don't know. I know they fought all the time he came home drunk and sometimes they argued over the children.
Q. Over the children?
A. Yes.
Q. Did your father work at the time? Did he hold down a job?
A. He works sometimes; not very much. He had whole lots of jobs. When he did work, he hardly ever gave her any money.

\* \* \* \* \*

Q. You didn't see any altercation between your mother and your father?
A. No.
Q. On March 16th? [The day of the alleged homicide.]
A. No.
Q. You didn't see any altercation where they were fighting on March 15th?
A. No.
Q. And you hadn't seen them fighting *within the past week* before this occurred?
A. Not as I remember.
Q. *Or even a month before?*
A. They had arguments.
Q. Just arguments?
A. He probably hit her in the face or something.
Q. He what?
A. Hit her in the face.
Q. He probably did?
A. *He always hit her in the face.*
Q. *When did he do that?*
A. Sometimes they would be fussing and he would kick her or something.

Q. When?
A. I don't remember what days.
Q. You don't know when it was?
A. No.
Q. Did your mother say she was going to kill him?
A. No.
Q. Did your mother drink often?
A. No.
THE COURT: What about your father?
THE WITNESS: He didn't drink too often.
BY [Counsel]:
Q. Now, you stated here when they asked you if your mother ever carried any type of weapon, and you stated: "Sometimes my mother used to carry a white pocket knife." Is that true?
A. Yes.
Q. How often did she carry that white pocket knife?
A. She didn't carry it often.
[Emphasis added.]

2. The trial judge's cross-examination proceeded as follows:

THE COURT: Under what circumstances did you say your parents would fight and argue? Why would they fight and argue?
THE WITNESS: When they were drunk.
THE COURT: When was the last time prior to March 16th you saw them fighting and arguing when they were drunk?
THE WITNESS: They were arguing that Friday.
THE COURT: That Friday?
THE WITNESS: Yes.
THE COURT: Any other time you ever seen them when they were drunk?
THE WITNESS: Not as I remember.
THE COURT: Any other time did you ever see your father beat on your mother other than—
THE WITNESS: Yes, he hit her on the head with a chair.
THE COURT: When was that?
THE WITNESS: It was a couple of months back.

be permitted to introduce through its direct examination that line of testimony, and you chose to go into the whole matter in cross-examination of the witness. Therefore, you opened it up for the Government to present whatever evidence that is relevant to rebut your line of questioning on cross-examination.

[Defense counsel:] My recollection was I went back a month.

THE COURT: My recollection is and my notes indicate you asked her did the mother and father ever fight. Isn't that correct?

[Defense counsel:] The past day and within the past week and within the past month.

THE COURT: All right.

The prosecuting attorney proceeded to examine appellant's daughter on the subject of the chair incident, and he later introduced a hospital report to substantiate the story. Defense counsel voiced his objection each time.

There is some doubt in our minds as to whether the trial judge in fact exercised his discretion upon a correct understanding of the circumstances when he held that defense counsel had opened up the matter of the chair incident. It is difficult to tell if the trial judge simply cut off argument about what precisely defense counsel had asked appellant's daughter, or if he did take in consideration counsel's correction to his notes and his recollection.

If the trial judge did understand the circumstances correctly, his exercise of discretion seems highly questionable. Whether or not he intended to do so, defense counsel's cross-examination brought out a history of fighting and arguing which, according to the witness, was appellant's fault. It is most peculiar then to admit testimony of an additional act of violence—one which the judge had already decided was prejudicial—to *rebut* the defense's line of questioning. The doctrine of curative admissibility is one dangerously prone to overuse. Here the issue of previous acts of violence had been laid squarely before the judge by the Government, and he had made a ruling in favor of the defense. If he then thought that defense counsel was stepping into forbidden territory, it would have been wiser to caution counsel or to rule out the questions.

In addition, it is troublesome that the trial judge himself carried out the examination which elicited from appellant's daughter the first mention of the chair incident. Here again, the judge had the alternative of calling the prosecuting attorney to the bench and telling him that the matter of prior acts of violence had now been opened up by defense counsel.[3]

---

\*    \*    \*    \*    \*

THE COURT: Other than hitting her in the head with a chair, did you see anything else between the two of them?

THE WITNESS: He had hit her once before and she went to the hospital but I don't remember what he hit her with.

THE COURT: How long did she stay in the hospital?

THE WITNESS: She just stayed overnight and they sewed her up.

3. We think it of the highest importance that trial judges bear in mind the warning this Court gave in United States v. Barbour, 137 U.S.App.D.C. 116, 118, 420 F.2d 1319, 1321 (1969):

[T]he judge must remain "a disinterested and objective participant in the proceedings," and principles both fundamental and indestructible in our criminal law exhort him to hold to a minimum his questioning of witnesses in a jury trial. Interrogation of witnesses tends to assimilate the court's role with the advocate's, and may tread over the line separating the provinces of judge and jury. The presumption of innocence may be jeopardized by an assumption of guilt radiated by over-zealous quizzing by the judge, and the right to fair trial may be imperiled by an apparent breach of the atmosphere of judicial evenhandedness that should pervade the courtroom. There is the risk that the questioning may bear "the seeds of tilting the balance against the accused" and place "the judge in the eyes of some jurors, on the side of the prosecution." *There is also the danger that*

We need not decide whether these circumstances surrounding the admission of testimony concerning the chair incident would by themselves lead us to reverse this conviction. For we have no doubt that it was reversible error for the trial judge to fail to give an instruction cautioning the jury that the evidence of prior violent acts came in only on the issue of malice, and that the jury might consider such evidence only after they may have determined that defendant was guilty of the unlawful killing of decedent on the date in question. Here, the relation between the various pieces of evidence and the offenses charged was not simple; the jury, in fact, found it necessary to ask the judge to repeat that part of the instructions which concerned the elements of second degree murder and manslaughter. Whenever prosecution evidence is introduced which is admissible only for a limited purpose, the defendant is entitled to instructions which inform the jury of the proper use which may be made of that evidence. And the failure of defense counsel to request such an instruction does not automatically bar this court from reaching the error if the instruction is not given.

The rule requiring an objection at trial to any error in the jury instructions must be read in conjunction with the rule permitting an appellate court to notice "plain error" in the absence of an objection.[4] The requirement of an objection at trial serves several functions. It affords the trial judge the opportunity to rule on counsel's contention, and minimizes the danger that a desired instruction will be omitted through inadvertence.[5] In this case, of course, the trial judge had ample notice of the importance defense counsel attached to the issue of the prior violent act, and there had been extensive colloquy at bench over the admissibility of the proffered evidence. No one disputed that the evidence was admissible only to prove malice, and the Government even observed that if the evidence were allowed in, an instruction would be appropriate.

The requirement of an objection at trial is also said to allow for the possibility that trial counsel may make a tactical decision against requesting certain instructions, on the theory that it might hurt the defendant to call the jury's attention to the relevant portion of the evidence.[6] Waiver of an instruction, then, will usually mean that omission of the instruction is not error at all, much less plain error.[7] If the waiver is going to have such an effect, however, it must be explicit; there must be a clear statement that the particular instruction in question is being waived, and it must appear from the record that the waiver was made on tactical grounds, rather than counsel's misapprehension as to the law.[8]

---

*the judge may elicit from the witness responses hurtful to the accused—responses to which the jury may assign peculiar weight because of their ostensible judicial sponsorship.* [Emphasis added; footnotes omitted.]

4. *Compare* Fed.R.Crim.P. 30, *with* Fed.R. Crim.P. 52(b); *see* C. Wright, 2 Federal Practice and Procedure § 484, at 291; 3 *id.* § 856, at 375 (1969). *See also* 8 J. Moore, Federal Practice § 30.04.

5. Golden v. United States, 318 F.2d 357, 360 (1st Cir. 1963); United States v. Currens, 290 F.2d 751, 758–761 (3d Cir. 1961).

6. *See* Troublefield v. United States, 125 U.S.App.D.C. 339, 372 F.2d 912 (1967).

7. Some instructions might be so important that it is not permissible for defense counsel to waive them, even on tactical grounds (instructions on the elements of the offense, for example).

8. In Troublefield v. United States, *supra*, the court said:

Here, not only was there no objection voiced by defense counsel, rather he expressly and specifically made clear that he was exercising a deliberate choice. He knew exactly what he was doing as is obvious from the argument to the jury. * * * [Waiver of the instruction] served counsel's "theory" of the defense as he had frankly said.

125 U.S.App.D.C. at 346, 372 F.2d at 919.

In this case it is clear that defense counsel did not explicitly waive his right to an instruction on the proper use of the evidence of the prior act of violence. Since no instruction was given and the prejudicial testimony was admitted without limitation, we must reverse this conviction.

■ In addition, we find the problem raised by this case indistinguishable from Jones v. United States, 128 U.S. App.D.C. 36, 385 F.2d 296 (1967), in which this court held that when a party seeks to impeach any witness by a prior inconsistent statement, then it is plain error not to give an *immediate* instruction limiting the effect of the prior statement, unless the party explicitly waives the instruction. We would hold that whenever evidence is admitted only for a limited purpose, it is plain error, in the absence of manifest waiver, to omit an immediate cautioning instruction. The danger of prejudicial effect from such evidence is so great that only an immediate and contemporaneous instruction can be considered sufficient to protect defendants. As long as we continue to have rules of evidence which admit testimony for some purposes but not for others, we must guard against its misuse by the jury.

Reversed.

MacKINNON, Circuit Judge (dissenting):

The majority opinion would reverse the judgment of conviction and order a new trial because evidence was admitted at the trial of a prior act of violence by appellant against his wife without instructing the jury (1) that such evidence was admitted only on the issue of malice and (2) that the jury could consider such evidence only after they determined that the defendant was guilty of the unlawful killing of the decedent. Since the trial judge did, in effect, instruct the jury *twice* substantially as outlined in (2) above,[1] in my view there

---

1. The first instruction was given on August 21, 1968:

    Now, ladies and gentlemen of the jury, before you can find this defendant, Earnest McClain, guilty of homicide in any degree, you must find the decedent in this case, Mary Frances McClain, did in fact die from the injuries incurred from a shove or push inflicted by this defendant, Earnest McClain. * * * If you find from the evidence, that the government has proved beyond a reasonable doubt, that he shoved or pushed the deceased, Mary Frances McClain, and the deceased fell to the ground hitting her head on the pavement, and such fall was wholly or in part the result of such a condition caused by the shove or push inflicted by the defendant, then you may find the decedent's death was caused by the defendant, Earnest McClain.

    And if you find that the other essential elements of second-degree murder were proved beyond a reasonable doubt, or if you find that the other essential elements of the lesser included offense of manslaughter has been proved beyond a reasonable doubt, you may find the defendant guilty.

    The second instruction was given on the morning of August 22, 1968 at the request of the jury:

    Now, with respect to manslaughter, the lesser included offense, I told you that manslaughter is the unlawful killing of a human being without malice. Now, manslaughter is committed when a person unlawfully kills another in a sudden heat of passion caused by adequate provocation. Manslaughter is the unlawful killing of another human being in a sudden heat of passion caused by adequate provocation.

    The first essential element of the offense of manslaughter is that the defendant, again, Earnest McClain, inflicted an injury or injuries upon the deceased resulting in her death.

    *   *   *   *   *

    So with respect to any consideration from the evidence to be given to the matter of manslaughter, the lesser included offense, there are four essential elements as I have just enumerated, each of which the Government must prove beyond a reasonable doubt: that he inflicted injuries upon the deceased from which she died; that at the time he inflicted the injuries he did so in the heat of passion; and that the heat of passion was induced or caused by adequate provocation; and, fourthly, that the homicide was committed without legal justification or excuse.

is nothing to that point. Thus, (1) is the only remaining basis asserted to support reversal.

Such contention requires us to consider whether substantial prejudice to appellant resulted from this evidence and its admission without a cautionary instruction. To answer this question necessitates considering the evidence in its proper posture.

Early in the trial the judge ruled that he would not admit evidence of an altercation between appellant and his wife that occurred on August 5, 1967, about seven months before the accident which caused her death. His ruling restricted the evidence to those acts between appellant and his wife which did not go back beyond the night before her death (Tr. 82). However, after that ruling, the defense opened up the subject generally as to the relationship between the two parties, during periods of time which antedated the time limit specified in the judge's ruling, by the cross-examination of the daughter (Carolyn) of appellant and deceased.[2]

In support of its conclusion the majority opinion asserts that defense counsel brought out prior acts of violence which were the fault of appellant and that accordingly it was "most peculiar then to admit testimony of an additional act of violence * * * to rebut the defense's line of questioning." This observation completely misinterprets the real purpose of defense counsel in pursuing that line of questioning which was to show *not* that they fought frequently but that *they fought infrequently.* That this was counsel's objective is clearly disclosed by his interrogation:

"They didn't fight and argue then very often?"

It is perfectly obvious that by this question he was trying to minimize in the mind of the jury the occasions upon which appellant fought with his wife. And his questions went to the entire relationship between the two of them.

"Did your mother and father fight *often?*"

This question has no time limit on it. Nor did the next question:

"*When* was that?"

Carolyn's answers were likewise not restricted in time "He *always* hit her in the face" is a good example. To which counsel inquired, "When did he do

---

Now, as with the first essential element of the offense of second degree murder, to establish this first element it is necessary that the defendant have inflicted an injury or injuries upon the decedent from which the decedent died.
\* \* \* \* \*
Malice is involved in second degree. Manslaughter is without malice. \* \*
\* \* \* \* \*
Now, in this case, before you ladies and gentlemen of the jury can find homicide to any degree, that is, second degree murder or manslaughter, you must find that the Government has proved beyond a reasonable doubt that Mary Frances McClain did in fact die as a result of a shove or a push inflicted by the defendant. \* \* \*

\* \* \* \* \*
Thus if you find from the evidence in this case that the defendant shoved or pushed Mary Frances McClain from the stoop and that she fell to the ground and she struck her head, and that this fall was the result either wholly or in part of a condition caused by the defendant when he shoved or pushed his wife, then you may find that the decedent's death, Mary Frances' death, was caused by the defendant. And if all of the other essential elements of the offense either of second degree murder or manslaughter have also been proved beyond a reasonable doubt, you may find him guilty of such offense, whichever of the offenses you find have been proven beyond a reasonable doubt by the Government in the presentation of the evidence to you in this case.

Now, on the other hand, if you find from the evidence that the Government has failed to prove that the fall was caused in whole or in part by the defendant's shove or push of his wife from the porch, and that the fall was caused entirely by an intoxicated condition of Mary Frances McClain on this date, then you cannot find the defendant guilty of homicide to any degree. And, accordingly, you must acquit him.

2. *See* note 1, majority opinion.

that?" Again no time limit. And two other questions by counsel related to the "past week before this occurred" and "even a *month before.*" Also, *"How often* did she carry that white pocket knife?" Again, no time limit.

So the situation was that the trial court in its ruling restricted the parties to evidence that did not go beyond the day before the decedent's death and that defense counsel by his interrogation exceeded that restriction. In so doing he completely opened up the subject by asking questions that went to the entire relationship between the parties without any time limit. Therefore, it was perfectly proper for the court and the United States Attorney to interrogate witnesses with respect to an incident which occurred seven months before decedent's death to show precisely when the parties did fight.[3]

Appellant on this appeal also contends that the court should have instructed the jury to give limited consideration to the prior altercation; but it is a sufficient answer thereto that appellant did not request or offer such instruction, either when the evidence was introduced or later.[4] The Federal Rules of Criminal Procedure provide:

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. *No party may assign as error any portion of the charge or omission*

*therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.* Opportunity shall be given to make the objection out of the hearing of the jury and, on request of any party, out of the presence of the jury.

Fed.R.Crim.P. 30. (Emphasis added). The obvious purpose behind such rule is to give the court an opportunity then and there to correct any errors or omissions. Burns v. United States, 274 U.S. 328, 47 S.Ct. 650, 71 L.Ed. 1077 (1927). The same rule has been applied in civil cases, Pennsylvania R. R. Co. v. Minds, 250 U.S. 368, 375, 39 S.Ct. 531, 63 L.Ed. 1039 (1919); United States v. Atkinson, 297 U.S. 157, 159, 56 S.Ct. 391, 80 L.Ed. 555 (1936); Palmer v. Hoffman, 318 U.S. 109, 119, 63 S.Ct. 477, 87 L.Ed. 645 (1943), and the underlying premise is the same *i.e.,* that in fairness to the trial court, to the parties and to the public interest, there should be an end to litigation when all parties have had a fair opportunity to present all issues of law and fact. The rule is particularly applicable where a party might have obtained all he was entitled to by way of a charge merely upon request. That is the situation here as no one doubts that the judge would have given the instruction if either side had requested it. Under such circumstances an accused should not be permitted to profit by his own failure to make the request.

It is also clear that evidence of the prior altercation was properly admissible on the issue of malice to show appellant's state of mind and probable intent and to show motive, the identity of the aggressor and absence of any mistake or accident. Wakaksan v. United States, 367 F.2d 639, 645

---

3. Griffin v. United States, 83 U.S.App. D.C. 20, 21, 164 F.2d 903, 904 (1947) cert. denied, 333 U.S. 857, 68 S.Ct. 727, 92 L.Ed. 1137 (1948); Roberts v. United States, 109 U.S.App.D.C. 75, 284 F.2d 209 (1960), cert. denied, 368 U.S. 863, 82 S.Ct. 109, 7 L.Ed.2d 60 (1961).

4. United States v. Cifarelli, 401 F.2d 512, 514 (2d Cir.), cert. denied, 393 U.S. 987, 89 S.Ct. 465, 21 L.Ed.2d 448 (1968); Mansell v. State, 364 S.W.2d 391 (Tex. Cr.App.1963).

(8th Cir. 1966), 'cert. denied, 386 U.S. 994, 87 S.Ct. 1312, 18 L.Ed.2d 341 (1967); *accord*, Drew v. United States, 118 U.S.App.D.C. 11, 16, 331 F.2d 85, 90 (1964); United States v. Deaton, 381 F.2d 114 (2d Cir. 1967); United States v. Cifarelli, 401 F.2d 512 (2d Cir.), cert. denied, 393 U.S. 987, 89 S.Ct. 465, 21 L.Ed.2d 448 (1968). A beneficial argument for appellant could also have been made to the jury that since the parties continued to live together thereafter the malice indicated was not so deep-seated as to indicate a desire to cause decedent any great bodily harm. Finally, since I find that it was proper for the court to interrogate the witness, Griffin v. United States, 83 U.S.App.D.C. 20, 21, 164 F.2d 903, 904 (1947), cert. denied, 333 U.S. 857, 68 S.Ct. 727, 92 L.Ed. 1137 (1948), that the instructions were proper on second degree murder and manslaughter, and otherwise, I would affirm the conviction.