*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CF-136

KENNETH FURR, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF3-16581-11)

(Hon. Russell F. Canan, Trial Judge)

(Argued March 17, 2015                    Decided April 13, 2017)

*Fleming Terrell*, Public Defender Service, with whom *James Klein* and *Jaclyn Frankfurt*, Public Defender Service, were on the brief, for appellant.

*James M Perez*, Assistant United States Attorney, with whom *Ronald C. Machen Jr.*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman, Chrisellen R. Kolb, Lara Worm,* and *Natalia Medina*, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN and BECKWITH, *Associate Judges*, and PRYOR,[*] *Senior Judge*.

_____

[*] Senior Judge King was assigned to this case originally. Following his retirement on November 23, 2016, Senior Judge Pryor was assigned to take his place on the division. Judge Pryor has listened to the recording of the oral argument.

Opinion for the court by *Associate Judge* GLICKMAN.

Opinion by *Associate Judge* BECKWITH, concurring in part and concurring in the judgment, at page 20.


GLICKMAN, *Associate Judge*:  Kenneth Furr appeals his conviction for assault with a dangerous weapon ("ADW").[1]  He contends the trial court erred by excluding testimony about an internal Metropolitan Police Department ("MPD") investigation that reportedly vindicated an officer whose testimony contradicted the complaining witness.  In addition, Furr claims the trial court plainly erred by failing to intervene *sua sponte* when the prosecutor impugned that officer in her rebuttal argument.  We conclude these claims lack merit and affirm Furr's ADW conviction.


**I.**


The criminal charges in this case arose from appellant's activities in the pre-dawn hours of August 26, 2011.  Appellant, a police officer, was off duty at the time.  In a CVS pharmacy at 400 Massachusetts Avenue, N.W., he encountered

---

[1] D.C. Code § 22-402 (2012 Repl.).

"Chloe," a transgender female, and solicited her for sex.[2]  She rebuffed him. Appellant then became embroiled in an altercation with Chloe's friend, a man named Wallace Patterson.  MPD Officer Edward Stewart, who moonlighted at the CVS as a private security guard, interrupted the two men and asked appellant to leave the premises.  Appellant went to his car, which was parked nearby.

A few minutes later, Patterson left the CVS.  He was accompanied by a man whom he identified at trial as Calvin Hogue.  As they walked past appellant's car, Patterson testified, appellant rolled down his window and shouted at him. Patterson challenged appellant to step out of his car.  According to Patterson, appellant responded by retrieving a gun from the glove compartment and pointing it at Patterson.  Appellant did not tell Patterson he was a police officer.  This alleged conduct was the basis for appellant's ADW conviction.

Patterson and Hogue returned to the CVS.  They were met by Officer Stewart, who testified that he had stepped outside the store to "make sure everything was okay."  Patterson stated that appellant "had a gun."[3]  Stewart asked

---

[2] Appellant was found guilty of solicitation for prostitution based on this conduct.  He does not contest that conviction in this appeal.

[3] The trial court admitted this statement not for its truth, but for the non-hearsay purpose of explaining Officer Stewart's subsequent actions.

him whether he saw it. Here the two witnesses' accounts diverged. Patterson testified he told Stewart that appellant had pointed the gun at him. He expected Stewart to "do his job" by effecting appellant's arrest. Stewart, however, testified that he "tr[ied] to ascertain how [Patterson] knew [appellant] had a gun, whether he actually saw the weapon, whether the weapon was displayed, just any – what color the weapon was, anything, but . . . [Patterson] wouldn't give [him] that information, and he continued to walk away." Stewart insisted that he "never received a report of a man pointing a gun." This conflict in the testimony generated the principal issue before us in this appeal.

After speaking with Patterson, Officer Stewart approached appellant's car and called for police backup, telling the dispatcher that a citizen had reported encountering "an individual that's armed." Appellant exited his car and immediately identified himself as a police officer. Feeling "relieved," as he put it at trial, Stewart cancelled his request for backup. The two officers chatted for a few minutes before Stewart returned to the CVS. Stewart saw no gun in plain view and did not ask appellant whether he had a gun or what had just happened between him and Patterson. Patterson, who drove back to the CVS a little later with some companions, testified that he realized the security guard "didn't do his job" because he evidently had not summoned the police to arrest appellant. The

prosecutor's echo of this statement in rebuttal is the subject of appellant's second claim on appeal.

Patterson and his friends eventually located appellant and pursued him as he attempted to drive off and evade them. In a violent denouement several blocks from the CVS on Pierce Street, appellant – who did indeed have a gun – fired his weapon at his pursuers' car, which then crashed into appellant's own vehicle. Appellant continued shooting after the collision. Patterson fled as police arrived on the scene. Appellant faced additional assault charges arising from the shooting on Pierce Street, but he was acquitted of them at trial based on his claim of self-defense. Thus, the only conviction at issue in this appeal is the one for ADW based on appellant's actions outside the CVS.

## II.

Following appellant's arrest, the MPD investigated not only his behavior, but also the performance of Officer Stewart after he received Patterson's report of a gun. The inquiry reportedly concluded that Stewart acted appropriately under the circumstances. At trial, appellant attempted to present testimony about that inquiry from the officer who conducted it. Appellant's primary claim on appeal is that the trial court abused its discretion by excluding this testimony.

**A.**

To find appellant guilty of an ADW outside the CVS, the jury needed to believe Patterson's statement that appellant pointed a gun at him; no other evidence of the assault was presented.[4] But Officer Stewart's testimony that Patterson never told him appellant displayed a gun contradicted Patterson and thereby undercut the credibility of his accusation. The prosecutor tried to deal with this problem by showing that Stewart's need to defend his own conduct from criticism and scrutiny supplied him with a motive to deny having learned that Patterson saw appellant brandish a gun.

Accordingly, in her direct examination of Stewart, the prosecutor elicited from him the fact that the MPD had investigated whether he took "appropriate police action" in response to Patterson's report. Stewart confirmed that he was "no longer under investigation" at the time of trial. The prosecutor did not ask him about the outcome of the investigation. On cross-examination, though, declaring that he "did not have a complainant, and . . . did not have a crime," Stewart testified that the MPD investigation had "exonerated" him.

---

[4] Patterson's companion Hogue was not called to testify.

Defense counsel then sought to inquire into "the reason they said you were exonerated." In response to the government's objection, defense counsel told the court she wanted the jurors to understand that "the police had decided [Stewart] was correct" in his judgment of the situation.[5] The court sustained the objection to this line of inquiry, ruling that the defense had established "definitively" that the investigation had exonerated Stewart and that the reasons articulated for that determination were inadmissible hearsay.[6]

On re-direct, the government again brought up the MPD investigation. Stewart acknowledged that an adverse finding would have subjected him to serious discipline or possibly termination of his employment. Stewart agreed that when the investigator interviewed him, he was "essentially trying to establish that no crime had occurred." The prosecutor then asked Stewart whether "it was based on what you told the [investigator] that . . . you were exonerated?" The court

---

[5] As counsel elaborated, "The government brought this [the MPD investigation of Stewart] up and tried to leave it in the air as if there was something suspicious about his behavior, and I think the defense is entitled to get out that, in fact, what he did that night was appropriate. And so the simple – that the conclusion was that . . . he did not have a complainant and he did not have a crime and, therefore, he was exonerated."

[6] The court rejected appellant's argument that the reasons articulated by the MPD for "exonerating" Stewart were admissible in evidence as an admission of a party opponent. Appellant has abandoned this argument on appeal.

sustained a defense objection to this question, and Stewart did not answer it. The prosecutor did not pursue the inquiry further and concluded her examination of the witness.

After a brief recess, however, defense counsel complained that the prosecutor's unanswered question inaccurately implied that Stewart was cleared in the MPD investigation *only* because of his own self-serving statements. The court agreed that the question might have conveyed that impression. The prosecutor stated she had not intended that implication and did not oppose an appropriate curative measure to dispel it. There ensued a colloquy in which the court and counsel considered different curative options. The prosecutor initially proposed that the court strike the question. Defense counsel thought that insufficient and suggested a stipulation "list[ing] what [the investigation] involved." The prosecutor commented that a written stipulation would "draw more attention to it than is really necessary" and proposed as an alternative that Stewart simply be recalled to the witness stand to "clarify" that the MPD investigation extended beyond his statement. Defense counsel expressed no objection to that alternative solution. (Counsel did not disagree with the prosecutor's reservation about a stipulation or continue to press for one.) The court was satisfied that "it's just fair to get out that there was more than just [Stewart's] say-so that exonerated him."

Accordingly, cautioning that "we're not going to get into all the subsidiary facts that went into it," the court elected to allow the prosecutor to recall Stewart to the stand and ask him whether there were "other components" to the MPD investigation besides his own interview "and whether other witness statements were reviewed as well."[7] Stewart confirmed there were. The prosecutor accepted the witness's answer and moved on. Defense counsel raised no objections to this procedure and appeared satisfied with the prosecutor's question and the witness's answer. She did not request that Stewart be allowed to provide any additional or more specific information about the breadth of the investigation.

Later in the trial, however, the defense called MPD Lieutenant John Haines to the stand. When Haines identified himself as the officer who had investigated Officer Stewart's "alleged misconduct," the government objected and the court asked for a proffer of the witness's testimony. Defense counsel responded that Haines would testify about "what things he considered" in the investigation (but without repeating what "anyone said," which counsel conceded would be hearsay)

---

[7] Before it decided to permit this inquiry, the court inquired whether Stewart knew about the other parts of the investigation. The prosecutor represented that Stewart did know what else was considered because he had received the final report of the investigation. The court then reviewed the investigation report to confirm what Stewart knew. Defense counsel, who previously sought to ask Stewart to testify about the articulated reasons for his exoneration, did not dispute that Stewart knew what had been considered in addition to his own statement.

and about "what conclusion he reached." This testimony was necessary, counsel stated, because Stewart, in his testimony, "was basically guessing about the things that were considered," while Haines "knows what was actually considered."[8] The government disputed the relevance and admissibility of Haines's testimony and argued that Stewart himself had corrected any misimpression that the MPD investigation considered only his account.

The court agreed with the government's objections and ruled that Haines's proffered testimony would not be relevant and that "whatever relevance this witness's testimony might have . . . is substantially outweighed by the potential for prejudice and misleading the jury [and] confusing the issues."

**B.**

"We review a trial court's decision to admit or exclude evidence for abuse of discretion. An evidentiary ruling by a trial judge on the relevancy of a particular item is a highly discretionary decision that will be upset on appeal only upon a

---

[8] Defense counsel's assertion that Stewart was "guessing" was contrary to what the court earlier had been told about Stewart's knowledge. *See supra*, note 7.

showing of grave abuse."[9] In addition, "[t]hat the evidence may be minimally relevant does not end our analysis. The trial judge has the discretion to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice."[10] We recognize that "the evaluation and weighing of evidence for . . . potential prejudice is quintessentially a discretionary function of the trial court, and we owe a great degree of deference to its decision."[11] In reviewing such rulings, "we must be mindful of context" and recognize that the trial court "virtually always is in the better position to assess the admissibility of the evidence in the context of the particular case before it."[12]

For the following reasons, we conclude that the trial court in this case exercised its discretion carefully and appropriately, and certainly did not abuse its discretion, by excluding the proffered testimony of Lieutenant Haines.

---

[9] *Riddick v. United States*, 995 A.2d 212, 216 (D.C. 2010) (internal quotation marks and citations omitted).

[10] *Foreman v. United States*, 792 A.2d 1043, 1049 (D.C. 2002) (citing *Mercer v. United States*, 724 A.2d 1176, 1184 (D.C. 1998)); *see also* FED. R. EVID. 403.

[11] *Foreman*, 792 A.2d at 1049 (internal quotation marks omitted).

[12] *Johnson v. United States*, 960 A.2d 281, 294-95 (D.C. 2008) (internal quotation marks omitted).

First, Lieutenant Haines's investigation of Officer Stewart was relevant and admissible at this trial for one purpose only: to show the existence of a motive for Stewart to deny that Patterson told him appellant displayed a gun. Only the fact that an investigation was pursued, with potential adverse consequences for Stewart, was probative of this motive; not what evidence Haines considered, how thoroughly he conducted his investigation, or what conclusions he reached. Haines's findings regarding what Stewart was told and whether he properly performed his duties as a police officer in response to that information were not admissible in evidence to prove those facts because they were based on hearsay rather than Haines's personal knowledge of what happened.[13] Testimony about the information on which Haines based his conclusions would likewise have been inadmissible hearsay. Indeed, for the same reason, Stewart's own testimony that he was "exonerated" by Lieutenant Haines's inquiry was not admissible to prove he acted appropriately; rather, it was only permissible for the jury to hear about

---

[13] *See, e.g.*, *Young v. United States*, 63 A.3d 1033, 1044 (D.C. 2013) ("An out-of-court statement offered in evidence to prove the truth of the matter asserted is hearsay whether the statement is quoted verbatim or conveyed only in substance; whether it is relayed explicitly or merely implied; whether the declarant is identified or not.") (footnote omitted); *Evans-Reid v. District of Columbia*, 930 A.2d 930, 944 (D.C. 2007) ("Statements in a police report which are based on what the officer was told by others are just as much hearsay as if stated on the witness stand by the officer himself. Likewise inadmissible are conclusions and conjectures by the officer as to fault or lack of fault[.]").

Stewart's vindication as a precautionary measure to ensure that the jury did not draw an adverse inference from the mere fact that Stewart had been under investigation.[14]

Second, it would not have been appropriate to admit Haines's testimony under the "curative admissibility" doctrine to allay prejudice to appellant's defense from the prosecutor's implication that Stewart's exoneration was based solely on his own statement. The doctrine of curative admissibility "provides that in certain circumstances [one party] may inquire into evidence otherwise inadmissible, but only after [the other party] has 'opened the door' with regard to this evidence."[15] Trial judges are enjoined to exercise caution and restraint before relying on the curative admissibility rationale, because "[t]he doctrine of curative admissibility is one dangerously prone to overuse," and the idea that the one side might "open the door," is often oversimplified.[16] "Opening the door is one thing. But what comes

---

[14] *See, e.g.*, *Howard v. United States*, 978 A.2d 1202, 1211 (D.C. 2009). It would have been advisable for the court to instruct the jury accordingly.

[15] *Mercer*, 724 A.2d at 1192 (quoting *United States v. Young,* 470 U.S. 1, 11 (1985)).

[16] *Id.* (quoting *United States v. McClain,* 440 F.2d 241, 244 (D.C. Cir. 1971)).

through the door is another.  Everything cannot come through the door."[17]  Rather, "[i]ntroduction of otherwise inadmissible evidence under shield of this doctrine is permitted 'only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence.'"[18]  In the present case, there was no such necessity, for the posited implication of the prosecutor's question was not unfairly prejudicial and, in any event, Haines's testimony was not required to correct it.  Hence the doctrine of curative admissibility was inapplicable.

The posited harmful implication of the prosecutor's question was that the only evidence Lieutenant Haines considered in "exonerating" Officer Stewart was Stewart's own, presumably self-serving, statement.  Even if the jury drew this implication, however, it would not have resulted in unfair prejudice to appellant.  The jury simply would have inferred that Haines did not conduct a thorough investigation, and accordingly the jury would have discounted the probative value of Haines's "exoneration" of Stewart and considered it only as establishing that the MPD investigation did not result in a finding of misconduct on Stewart's part.  But as we have explained above, that was exactly what the jury was supposed to do

---

[17] *Id.*

[18] *Id.* (quoting *United States v. Winston*, 447 F.2d 1236, 1240 (D.C. Cir. 1971)).

anyway, because Haines's findings were based on inadmissible hearsay. Appellant was not entitled to have the jury consider them for their truth. Thus, even if the prosecutor's implication led the jury to treat the MPD investigation of Stewart as unreliable, and to attach no probative weight to his exoneration, appellant suffered no unfair prejudice.

Furthermore, even assuming the prosecutor's implication was not innocuous, Haines's proffered testimony was not necessary to dispel the potential harm. The court took other reasonable curative measures. At the outset of the trial, the court had instructed the jury that it "may only consider the evidence properly admitted during the trial," which the court identified specifically as exhibits and sworn testimony. The court further explained that when it sustained an objection to a question, the jury "[was] not to guess or speculate as to what the witness might have said [b]ecause . . . under the law . . . the question is inappropriate." The record provides no reason to think the jury disregarded these admonitions when the court sustained appellant's objection to the question the prosecutor put to Stewart. "In the absence of any good reason to suppose otherwise, we presume the jury followed the court's direction."[19]

---

[19] *Muir v. District of Columbia*, 129 A.3d 265, 275 (D.C. 2016).

Beyond that, with appellant's consent, and after careful and thoughtful consideration of the proposed alternatives,[20] the court settled on a suitable evidentiary "cure": having the government recall Stewart to the witness stand, following the conclusion of its redirect examination and a recess, for the specific purpose of testifying that "other components," including "other witness statements," were considered in the MPD investigation of his conduct. The prosecutor elicited this testimony and did not attempt to challenge it. There was no suggestion of any kind that the prosecutor disagreed with it or that the jury had any reason to disbelieve it. On the contrary, to the jury it undoubtedly appeared that the prosecutor was being allowed to introduce testimony deemed to be important and truthful.[21] Appellant had no objection to this curative procedure and identified no deficiency in its implementation.[22] It was entirely reasonable for the trial court to conclude, as it did, that Stewart's testimony sufficed to remove any unfair

---

[20] It is noteworthy that defense counsel did not propose calling Lieutenant Haines when the court was considering the curative options.

[21] Moreover, there was nothing implausible about Stewart's testimony. At trial the jury received other evidence bearing on Stewart's conduct that Lieutenant Haines might have considered – for example, not only testimony of witnesses, but contemporaneous video surveillance footage of the street outside the CVS which showed Patterson's encounter with appellant.

[22] Later in the trial, when appellant proffered Lieutenant Haines's testimony, defense counsel asserted that Stewart was "basically guessing" about what Haines had considered in the investigation. Neither Stewart's actual testimony nor

*(continued…)*

prejudice from the prosecutor's earlier question and that nothing further needed to be done.

It also was entirely reasonable for the court to conclude that any possible relevance of Haines's proffered testimony was substantially outweighed by "the potential for prejudice and misleading the jury, confusing the issues." The proffered testimony would have been unfairly prejudicial to the prosecution and misleading to the jury because it would have exacerbated the risk that the jury would treat Haines's "exoneration" of Stewart as a reason to credit Stewart and find that Patterson did not tell him appellant brandished a gun. A further risk was that the proffered testimony would lead to a mini-trial over the adequacy and fairness of Haines's investigation of Stewart and the reasonableness of his conclusions, which was not and should not have been the jury's focus. The trial court's recognition and consideration of these dangers demonstrates that it carefully exercised its discretion in excluding Haines's testimony even if that testimony had some minimal relevance or might have been permitted as an additional curative measure.

---

*(continued…)*
anything else in the record supports that assertion, and there is no reason the jury would have thought Stewart was "guessing." And for the reasons we have already given, the fact that Haines may have known what information he considered better than Stewart did was irrelevant.

In sum, by excluding the proffered testimony of Lieutenant Haines, "[t]he trial court merely prevented counsel from introducing an irrelevant, collateral, and potentially prejudicial issue into the trial."[23] We hold that the court did not at all abuse its discretion in so doing, let alone "gravely" abuse it.

## III.

Appellant also claims the trial court plainly erred by permitting the prosecutor to comment in rebuttal argument that Officer Stewart "didn't do his job." Appellant contends this remark was improper because the prosecutor knew the MPD had thoroughly investigated Stewart and "concluded the opposite," *viz.*, that Stewart was "doing his job" when he ceased his investigation of the report of

---

[23] *Grayton v. United States*, 745 A.2d 274, 281 (D.C. 2000). The concurrence errs in stating that *Howard v. United States*, 978 A.2d 1202 (D.C. 2009), approved testimony "similar to" the testimony from Lieutenant Haines proffered by appellant in this case. *Post* at 28-29; *see also post* at 24 (stating that "[t]his court approved similar – and much more extensive – testimony in *Howard*"). *Howard* did not approve testimony about the nature of the MPD investigation such as appellant sought to present in this case. The testimony about an MPD investigation at issue in *Howard* "was limited to clarifying that the police department routinely conducted such investigations . . . and that the investigation concluded that the use of force in this instance was justified." *Id.* at 1211. Nor is it accurate to characterize the testimony in *Howard* regarding the police investigation as "much more extensive" than in this case. Like the trial court in *Howard*, the court here allowed testimony as to the conclusion of the investigation. The only additional testimony in *Howard* was that the investigation was routine (a fact neither party in this case sought to elicit).

a man with a gun upon ascertaining the man was a police officer. Appellant further contends the remark was improper because it was the prosecutor's expression of her personal opinion about Stewart's professional conduct.

We reject both contentions. Appellant did not object when the prosecutor argued as follows:

> Officer Stewart told you he got a report of a man with a gun, and the moment that this man told him, I'm a police officer, he ceased investigation . . . . He had reported a gun . . . [I s]ubmit to you that [Officer Stewart's] testimony was colored by that. He didn't do his job because if he would have done his job, the rest of the night wouldn't have happened.

We consider the argument unobjectionable because it was fair comment on Stewart's failure to investigate appellant's encounter with Patterson and his possible testimonial bias resulting from the MPD's investigation of that failure.[24] Lieutenant Haines's opinion that Stewart did his job properly was neither admissible evidence of that fact nor binding on the government in any way; it thus did not preclude the government from arguing otherwise based on the admissible

---

[24] *See Irick v. United States*, 565 A.2d 26, 36 (D.C. 1989) ("[T]he key inquiry is whether the attorney is commenting on the evidence, which he may do, or expressing a personal opinion, which is taboo. A comment will be within the acceptable range as long as it is in the general nature of argument, and not an *outright* expression of opinion." (emphasis in original)).

evidence at trial.[25]

## IV.

The trial court did not abuse its discretion by excluding the proffered testimony of Lieutenant Haines or plainly err by not intervening in the government's rebuttal argument. Appellant's conviction for ADW is hereby

*Affirmed.*

BECKWITH, *Associate Judge*, concurring in part and concurring in the judgment: I concur in the judgment and in the court's holding that the trial court did not abuse its broad discretion in excluding Lieutenant Haines's testimony about the "exoneration" of Officer Stewart, because I agree that the trial court had, with the arguable acquiescence[1] of Mr. Furr's counsel, already furnished a remedy for

---

[25] Of course, appellant's failure to object confines us to review for plain error, which requires him to show "egregious" prosecutorial misconduct that "so clearly prejudiced his substantial rights as to jeopardize the fairness and integrity of his trial." *Id.* at 32. Appellant does not come close to making such a showing.

[1] The record does not bear out the court's characterization of defense counsel as having "consent[ed]" to the trial court's remedy. *Ante* at 16. Both Mr. Furr and the prosecutor proposed remedies for the prosecutor's problematic unanswered question. The trial court ultimately went with one of the prosecutor's

*(continued…)*

the prejudice stemming from the government's questions about the misconduct investigation and could properly have concluded that further testimony on the matter would significantly risk "misleading the jury [and] confusing the issues." *Ante* at 17. I write separately to express my disagreement with the court's suggestion that the trial court would have abused its discretion had it gone the other way and allowed Lt. Haines's testimony under the curative-admissibility doctrine.[262] *Ante* at 13–15.

The essential problem with the court's analysis on this point is that it fails to fully account for the prejudice to Mr. Furr resulting from the prosecutor's questions about the investigation into Officer Stewart's possible misconduct. As the court acknowledges, Officer Stewart's testimony that Mr. Patterson did not report Mr. Furr pointing a gun at him was critical to Mr. Furr's defense. *Ante* at 6.

---

*(continued…)*
proposed remedies, and although Mr. Furr's counsel did not explicitly voice opposition at that time, neither did she affirmatively consent.

[2] This issue is a collateral one, as the question properly before us is whether the trial court abused its discretion in excluding the evidence, not the very different question—different because a "decision-maker exercising discretion has the ability to choose from a range of permissible conclusions"—whether it would have abused its discretion had it admitted the evidence. *Johnson v. United States*, 398 A.2d 354, 361 (D.C. 1979); *see id.* at 362 ("[T]he appellate court, in its review capacity, does not render its own decision of what judgment is most wise under the circumstances presented."). Because it is the focus of the court's analysis, however, *see ante* at 13–15, the issue warrants discussion.

And this testimony was impeached when the prosecutor elicited testimony from Officer Stewart that "as a result of [his] encounter with [Mr. Furr], [he was] . . . under investigations [sic] with the Metropolitan Police Department." The testimony suggested that Officer Stewart had a motive to falsely deny—both to the MPD investigators and in court—that Mr. Patterson had reported Mr. Furr pointing at a gun at him. Had the MPD investigators concluded that such a report had been made, Officer Stewart's undisputed failure to take action could have resulted in discipline.

In addition to this impeachment theory, which the government did not develop in its direct questioning of Officer Stewart,[3] there is another conclusion the jury may have taken away from this line of questioning. The testimony about the misconduct investigation suggested that Officer Stewart may have committed misconduct—that is, that he had acquired evidence that Mr. Furr had pointed a gun at Mr. Patterson yet had failed to act. The trial court recognized this latter

---

[3] Only on redirect—after the defense had asked Officer Stewart about the "exoneration" and after a bench conference on the appropriate scope of testimony about the misconduct investigation—did the prosecutor elicit testimony that when Officer Stewart made his statement to the MPD investigators, his goal was "essentially . . . to establish that no crime [had] occurred." The prosecutor at that time had Officer Stewart explain the possible disciplinary consequences to him of a finding of misconduct.

implication, noting in a bench conference that "the government brought it out as if [Officer Stewart] had done something wrong."

The impeachment use of the testimony about the misconduct investigation involves a proper inference. This court has repeatedly held that evidence that a witness is or was under investigation is admissible if probative of the witness's motive to testify falsely or at least shade his or her testimony. *See, e.g.*, *Smith v. United States*, 26 A.3d 248, 261 (D.C. 2011). But the non-impeachment use of the testimony as evidence that Officer Stewart engaged in misconduct relies on an improper inference. The fact that a person is under investigation is, like the fact that a person has been accused, arrested, or charged with a crime, not reliable evidence that the person committed misconduct and runs the risk of being given undue weight by the jury.[4] *Cf.* 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 4:31 (4th ed. 2016) ("Evidence of prior arrests or charges

---

[4] If this were not so, there would be no defensible basis for precluding testimony about the result of the investigation and we would therefore have to conclude that the trial court erred in excluding Lt. Haines's testimony. To the extent that evidence that a person is or was under investigation is competent evidence that the person has committed misconduct, the outcome of the investigation should also be considered competent evidence on this point, as it is even more reliable—absent reason to believe that the investigation was bungled or corrupted.

should not itself be admitted . . . [because] neither one is sufficiently probative on the basic question whether . . . any . . . underlying act occurred.").

Mr. Furr did not seek to have the testimony about Officer Stewart's misconduct investigation excluded as unfairly prejudicial or request that the trial court give a limiting instruction. Instead, he sought to blunt the prejudicial effect of the testimony by eliciting testimony from Officer Stewart on cross-examination that he had been "exonerated." The government did not object to this testimony, but had it done so, the trial court could properly have overruled the objection under the doctrine of "curative admissibility" or "opening the door." *Howard v. United States*, 978 A.2d 1202, 1210 (D.C. 2009); *Gordon v. United States*, 783 A.2d 575, 586–87 (D.C. 2001); *see also* 1 Mueller & Kirkpatrick, *supra*, § 1:12 (explaining that even the proper admission of evidence "may open the door to counterproof that would otherwise be excludable under various doctrines"). This is because the testimony about Officer Stewart's exoneration went no further than was "necessary to remove any unfair[ly] prejudic[ial]" implication of Officer Stewart's earlier testimony that he was suspected of wrongdoing in connection with this case. *United States v. Winston*, 447 F.2d 1236, 1240 (D.C. Cir. 1971) (citation omitted).

This court approved similar—and much more extensive—testimony in *Howard*, 978 A.2d 1202. In that case, the defendant sought to impeach a police

officer by asking on cross-examination whether there had ever been "an internal police investigation regarding the use of force against" the defendant. *Id.* at 1206. The officer responded that there had been a "standard internal investigation." *Id.* On redirect, the trial court allowed the prosecutor to elicit testimony from the officer "about the 'standard procedure' followed in police use-of-force investigations," which included "the fact that such investigations occur as a matter of course," that he "was not a subject of the investigation," and that "the investigation concluded that the use of force was justified." *Id.* In rejecting the defendant's claim on appeal that this testimony was improper, this court explained that "[b]ecause defense counsel elicited testimony on the subject in the first instance during his cross-examination . . . , the government was entitled on redirect to dispel any potential prejudice . . . ." *Id.* at 1211; *see also id.* ("When the government elicits testimony on a subject during redirect examination that the defense brought up during cross-examination, the defendant cannot well complain of being prejudiced by a situation which he created . . . ." (internal quotation marks, brackets, and citation omitted)). That reasoning would apply in the present case with even stronger force, in light of Mr. Furr's constitutional right to present a complete defense. *Cf. Williams v. United States*, 642 A.2d 1317, 1322 (D.C. 1994) (explaining that the "right [of a defendant] to question a government witness about a current adversarial relation to law enforcement enjoys constitutional protection"

but that the government does not have a similar right to probe whether a witness is "fired by anti-government hostility" as a result of such an "adversarial relation").

Thus, Officer Stewart's testimony about the "exoneration" was wholly appropriate under the curative-admissibility doctrine. On redirect, however, the prosecutor partially undermined this curative testimony, asking Officer Stewart whether he agreed that "it was based on what [he] told the lieutenant that . . . [he was] exonerated." The trial court sustained an objection to this question, yet both of the parties and the trial court recognized that the unanswered question implied that the Officer Stewart's exoneration was based exclusively or primarily on his own statement.[5] As the court summarizes, the parties and the trial court discussed

---

[5] The trial court recognized the prejudicial nature of the unanswered question and the need for a cure. This court, however, asserts that at most the unanswered question "would have [caused the jury to] infer[] that [Lt.] Haines did not conduct a thorough investigation, . . . discount[] the probative value of [Lt.] Haines's 'exoneration' of [Officer] Stewart[,] and consider[] it only as establishing that the MPD investigation did not result in a finding of misconduct on [Officer] Stewart's part." *Ante* at 14. The court contends that "that was exactly what the jury was supposed to do anyway" and that Mr. Furr "was not entitled to have . . . the jury consider [the finding of no misconduct] for [its] truth." *Ante* at 14–15. Thus, the court concludes, Mr. Furr was not entitled to rely on the curative-admissibility doctrine.

The court's analysis fails to account for the fact that the initial testimony about the investigation implied that the MPD had good reason to believe that Officer Stewart had engaged in misconduct. The jury could reasonably have thought that the MPD would not have initiated an investigation unless it had suspected wrongdoing, especially given the absence of testimony about the

*(continued…)*

several options to rectify this false impression, and the trial court ultimately decided that Officer Stewart should be asked whether any "other components" besides his own statement were considered in the investigation. *Ante* at 8–9; *see also supra* note 1. In making this determination, the trial court was implicitly relying on the curative-admissibility doctrine: Officer Stewart's testimony about whether the investigation considered factors other than his own statement would not have been admissible had the government not opened the door by asking about the investigation and by undermining the defense's earlier curative efforts. The trial court noted, in fact, that the government "asked the question which . . . did raise the issue that somehow it was [Officer Stewart's] statement alone which constituted why his lieutenant exonerated him."

---

*(continued…)*

relevant MPD policies. The trial court could have found that the testimony by Officer Stewart that he was ultimately "exonerated" by the MPD—without testimony about the investigation's thoroughness or the evidentiary standard applied—was insufficient to defeat such an inference. And even if the trial court thought that the testimony had initially been sufficient in this regard, the trial court could have found that the testimony had been rendered impotent by the unanswered question implying that the investigation had been a sham—that the MPD investigators had perfunctorily cleared Officer Stewart upon consideration of his own self-serving statement. I therefore see no persuasive reason to disagree with the trial court's assessment that a further cure was required, especially given that the trial court is, as this court acknowledges, "virtually always in [a] better position [than this court] to assess the admissibility of . . . evidence in the context of the particular case before it." *Ante* at 11 (quoting *Johnson v. United States*, 960 A.2d 281, 294–95 (D.C. 2008)).

The trial court could just as properly have exercised its discretion to permit curative testimony by Lt. Haines. Testimony by Lt. Haines about the factors considered in the investigation would ordinarily have been irrelevant and possibly also inadmissible on other grounds.[6] But the trial court could have admitted the testimony under the curative-admissibility doctrine to remedy the misimpression created by the government's question about whether Officer Stewart's exoneration was based on his own statement and to mitigate whatever remaining unfair prejudice had resulted from the government's initial questioning about the investigation. If Lt. Haines's testimony were properly circumscribed—limited, for instance, to listing the factors considered in the investigation—it would not have gone beyond what was necessary to remedy the prejudice.[7] *See Howard*, 978 A.2d

---

[6] The court says that "[t]estimony about the information on which [Lt.] Haines based his conclusions would . . . have been inadmissible hearsay." *Ante* at 12. The court does not elaborate on this point or cite relevant authority, and it is doubtful that the hearsay rule would have been violated unless Lt. Haines had described the content of the information or the conclusions that he drew from it. *See ante* at 12 n.13.

[7] Further, although it was not expressly argued in the trial court, Lt. Haines's testimony about the factors considered in the investigation also could have helped to rebut the government's legitimate impeachment theory that Officer Stewart had a motive to lie in order to avoid discipline. If Officer Stewart had believed that the investigators would be considering evidence from a variety of sources, his motive to lie would arguably have been diminished because he would have been aware of a higher likelihood that his lies would be ineffective and of a possibility that the lies could backfire and be used as an aggravator to justify a harsher sanction. The real question in assessing Officer Stewart's motive is what

*(continued…)*

at 1211 (approving testimony similar to that proffered by Mr. Furr in the present case). Counsel for Mr. Furr did not raise this option during the discussion about the remedy, however, and the trial court thus had no occasion to afford this particular remedy at that time.

Instead, based on the trial court's ruling, the prosecutor elicited the following testimony from Officer Stewart:

> Q. Officer Stewart, were you interviewed as part of your investigation with regard to your misconduct on August 26, 2011?
>
> A. Yes. That morning, yes.
>
> Q. And are you aware as to whether there were other components to that investigation, and whether other witness statements were reviewed, as well?
>
> A. Yes.

---

*(continued…)*
Officer Stewart knew, but Lt. Haines's testimony on the investigation is indirect evidence of what Officer Stewart knew about it and could have reinforced Officer Stewart's testimony on the matter. This is a more attenuated theory of admissibility than the one set forth in the text above, but it is perhaps sufficient. The general rule is that "[i]f . . . evidence offered conduces in any reasonable degree to establish the probability or improbability of the fact in controversy, it should go to the jury." *Dockery v. United States*, 746 A.2d 303, 307 (D.C. 2000) (quoting *Home Ins. Co. v. Weide*, 78 U.S. (11 Wall.) 438, 439 (1870)). And although there would have been a risk that the jury would use this evidence for an improper purpose, this concern was also present—perhaps to a greater degree—in the initial testimony elicited by the government about the investigation.

Officer Stewart's responses were arguably not sufficient to remedy the prejudice generated by the prosecutor's initial questioning about the investigation and the prosecutor's unanswered question about whether Officer Stewart's exoneration was based on his own statement. Most importantly, the government laid no foundation for the latter of these two questions, and it is thus probable that the jury viewed Officer Stewart's response that he was "aware" of "other components" as speculative and self-serving. Given that the cure was arguably deficient, and given Mr. Furr's constitutional right to present a defense, the trial court could have exercised its discretion and granted Mr. Furr's later request to permit Lt. Haines to testify. *See Howard*, 978 A.2d at 1211. Because, however, Mr. Furr's counsel did not express any concern about the initial cure with a contemporaneous objection and because the cure was not wholly ineffectual, I agree with the court that the trial court did not abuse its discretion in excluding the testimony. *See ante* at 15–17.

Finally, the court's resolution of Mr. Furr's prosecutorial misconduct claim warrants brief comment. *See ante* at 18–20. The court correctly holds that the trial court did not plainly err in declining to respond *sua sponte* to the prosecutor's argument, during rebuttal, that Officer Stewart "didn't do his job." The prosecutor's argument paraphrased Mr. Patterson's testimony and thus was a fair characterization of the trial evidence. But it also contradicted the result of the MPD investigation into Officer Stewart's conduct. The defense had sought to have

evidence about this investigation admitted following the prosecutor's initial questioning on the subject, but the trial court had excluded this evidence at the government's request. Given this context, the prosecutor's argument was not completely "unobjectionable," *ante* at 19, and the trial court would have acted within its discretion in giving a curative instruction had the defense made a timely objection. *See Williams v. United States*, 877 A.2d 125, 129 (D.C. 2005) ("[T]he prosecution [has a] duty to guard against inviting inferences of fact by a jury arguably contrary to evidence it has succeeded in having excluded.").

Notwithstanding the foregoing reservations, I concur in the court's opinion in all other respects and concur in the judgment.