Nathaniel A. HOWARD, Appellant

v.

UNITED STATES, Appellee.

No. 08–CF–173.

District of Columbia Court of Appeals.

Argued May 6, 2009.

Decided Aug. 27, 2009.

Warren E. Gorman, appointed by the court, for appellant.

Bernard J. Delia, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney at the time the brief was filed, and Roy W. McLeese, III, Elizabeth Trosman, and Jonathan P. Hooks, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY, SCHWELB, and KING, Senior Judges.

TERRY, Senior Judge:

Appellant was convicted of possession of cocaine with intent to distribute it. On appeal from that conviction, he argues (1) that the trial court abridged his Sixth Amendment right to confront the witnesses against him by limiting his cross-examination of the police officers who executed a search warrant at his home, and (2) that the court abused its discretion by permitting testimony about an internal police finding that the use of force against appellant's brother during the execution of the search warrant was justified. We reject the second argument but agree with the first, and thus we reverse appellant's conviction and remand the case for a new trial.

## I

### A. *Factual Background*

A search warrant was executed on November 7, 2006, at appellant's home at 3327 D Street, S.E., by a team of officers from the Sixth District of the Metropolitan Police. The search warrant was based on an affidavit signed by Officer David Randolph which included information from a "special employee" (*i.e.,* a police informant) who had purchased drugs at that same address. During the search, according to the government's evidence, Sergeant Kai Gainey encountered appellant and his brother, Lester Howard, in a back room and told them to put their hands on the

wall. Sergeant Gainey noticed that appellant repeatedly made a dropping gesture with his right hand and saw a purple package fall from his hand to the floor.

Officer Seamus Brackett then entered the room, patted appellant down, and tried unsuccessfully to handcuff him. The officer told appellant to leave his hands against the wall, but appellant replied that his arm was broken. Because appellant continued to be uncooperative, Sergeant Gainey went to assist Officer Brackett. Lester Howard then told Sergeant Gainey to "get off" appellant because appellant's arm was broken, but it was unclear which arm he was talking about because the officer did not see either a cast or a sling. Sergeant Gainey began struggling with Lester Howard just as Officers Jonathan Branch and Marcellus Jenkins came into the room. After ordering Lester Howard "several" times to stop resisting, Officer Branch struck him twice in the face. Lester Howard was eventually subdued, but he suffered a broken nose as a result of his struggle with the police.

Officer Randolph entered while appellant was resisting arrest and assisted Officer Brackett in handcuffing him. Brackett then searched appellant, while Sergeant Gainey and Officers Randolph and Branch were present, and found a folded piece of aluminum foil in his left rear pants pocket which contained a white rock-like substance. He also retrieved the bag from the floor that appellant had previously dropped, and inside it he found multiple purple ziplock bags which also contained white rock-like substances. Both the rocks in the ziplock bags and the rock in the foil packet were field-tested for cocaine and yielded a positive result. Officer Tony Mason was also a member of the team executing the search warrant, but it is

unclear whether he actually entered the house.[1]

## B. *The Motion to Suppress*

Before trial, appellant filed a motion to suppress evidence, asserting that the search warrant leading to the recovery of the cocaine was defective because the supposed sale of drugs to the special employee never occurred. The motion also alleged that several months earlier, on January 31, 2006,[2] Sixth District Officers Jonathan Branch and Tony Mason grabbed and handcuffed appellant at his home, causing him to fall and break his arm. As a result of this incident, appellant filed a civil suit against the city and Officers Branch and Mason.

At the suppression hearing, the government called Sergeant Kai Gainey and Officers David Randolph, Seamus Brackett, and Aisha McCrary, and appellant called Officers Mason and Branch. Officer Randolph testified that he swore out an affidavit on November 3 and took it to a judge, who signed a warrant authorizing a search of the premises at 3327 D Street, S.E. The affidavit included information from the special employee who had purchased drugs at that address. Officer Randolph said that he knew Officers Mason and Branch, but that he did not speak to either of them before obtaining the warrant in this case. He was unaware of the incident between appellant and those officers, and did not learn about appellant's suit against the police department and the officers until some time after the execution of the search warrant. Randolph testified that Officers Branch and Mason were not involved in the special employee drug buy, in writing the affidavit, in obtaining the search warrant, or in writing the return,

although those two officers—along with several others—were part of the team that executed the warrant. He also said that no police officer told the special employee to go to appellant's house; rather, the employee had met another person who directed him there to purchase cocaine.

Officer McCrary testified that, as the "seizing officer," she did not see the recovery of the drugs from appellant, but was merely told where the drugs came from. Both Officers Mason and Branch denied that they asked any other police officers to obtain a search warrant for appellant's home or to secure a special employee to make a drug buy there. Sergeant Gainey stated that neither Mason nor Branch instructed him to target appellant's house for a search warrant and that he was present when drugs were recovered from appellant. Officer Brackett testified that he was a member of the team that executed the search warrant, that he did not know about appellant's lawsuit at that time but found out about it a few months later, and that Officers Branch and Mason had not said anything unusual about the search before it occurred.

The court denied appellant's motion to suppress, ruling that the search warrant was facially valid and established probable cause. After expressly finding the officers' testimony credible, the court said that the warrant would have established probable cause "even with the inclusion of information about a lawsuit filed by the defendant, who is the owner of the house," and that there was "no information that the officers knew about [the lawsuit]."

---

1. Both appellant and his brother Lester were indicted for possession of cocaine with intent to distribute it. The government later dismissed the charge against Lester Howard, but the case against appellant proceeded to trial.

2. The warrant was executed on November 7, 2006.

## C. *The Trial*

Before the trial began, the court denied a defense request to allow cross-examination of the officers involved in the execution of the search warrant to determine whether they might be biased. Defense counsel argued that cross-examination was relevant to bias, but the court ruled that such an inquiry would be "confusing, misleading, and prejudicial" because the testifying officers were not aware of the prior incident or the lawsuit. The court said it would permit limited inquiry about the altercation that occurred during the arrest when Lester Howard's nose was broken. In addition, the court stated that if any officers changed their previous accounts of the incident while testifying, counsel would be allowed to ask whether such changes occurred because the officers had since learned of the lawsuit.

Sergeant Gainey, Officer McCrary, Officer Randolph, and Officer Brackett testified for the government about the execution of the search warrant at appellant's home.[3] During the cross-examination of Sergeant Gainey, defense counsel asked about Lester Howard's injury and whether there had been an internal police investigation regarding the use of force against him. The court allowed the question over the government's objection, and Gainey testified that the police department conducted a standard internal investigation into the use of force by the officers during the search. On redirect examination, the government elicited testimony about the "standard procedure" followed in police use-of-force investigations, including the fact that such investigations occur as a matter of course when any police force is used during an "incident." Gainey also testified that he was not a subject of the investigation. When the government asked about the results of the investigation, defense counsel objected. The court ruled that the testimony was "relevant," and that since the defense had initially asked about the investigation during cross-examination, the government could "follow up in this way." Sergeant Gainey then stated that the investigation concluded that the use of force was justified.

Lester Howard testified for the defense that when the police told him and appellant to put their hands on the wall, appellant had difficulty keeping his right arm up because it had previously been broken. He said that when appellant said his arm was broken, a police officer jumped on appellant and hit him in the face, knocking him to the floor. He also denied seeing anything fall from appellant's hand and denied seeing anything taken from appellant's person. Lester Howard stated that an officer choked him and punched him in the face three or four times, breaking his nose, before that officer arrested him. Lenora Lucas, who was present when the search warrant was executed, testified that at that time appellant's right arm was broken.

## II

 Appellant argues that by denying his request to cross-examine witnesses about their potential bias, the trial court abridged his Sixth Amendment right to confront the witnesses against him. Bias exists "when a witness has a general willingness or motivation to testify falsely on

---

3. The government also presented a chemical analysis of the substances recovered from the search. The analysis showed that the 43 purple bags recovered from the floor contained drugs weighing 5 grams made up of 80 percent cocaine base, and that the foil packet recovered from appellant's pocket contained drugs weighing one-fourteenth of an ounce made up of 74.6 percent cocaine base. An expert testified that the manner in which these drugs were packaged indicated an intent to distribute.

the stand." *Rose v. United States*, 879 A.2d 986, 995 (D.C.2005). "Bias cross-examination of a main government witness is always a proper area of cross-examination and is relevant in assessing the witness' credibility and evaluating the weight of the evidence." *Blunt v. United States*, 863 A.2d 828, 833 (D.C.2004); *accord, Scull v. United States*, 564 A.2d 1161, 1165 (D.C. 1989) ("Bias is always a proper subject of cross-examination ... and the alleged bias or unreliability of a witness is never a collateral issue" (citations omitted)). On the other hand, although the "opportunity to cross-examine adverse witnesses is an inherent component of the defendant's Sixth Amendment right of confrontation ... that right is subject to reasonable limits imposed at the discretion of the trial judge ... to prevent harassment, prejudice, confusion of the issues, or repetitive, cumulative, or only marginally relevant questioning...." *Id.* at 1164 (citations omitted).

▇▇▇ A "proper foundation" is required for cross-examination to establish bias, including a proffer of facts sufficient to enable the court "to evaluate whether the proposed question is probative of bias." *Jones v. United States*, 516 A.2d 513, 517 (D.C.1986). The proffer must include " 'some facts which support a genuine belief' that the witness is biased in the manner asserted," *id.* (citation omitted), or at least "a 'well-reasoned suspicion' rather than 'an improbable flight of fancy' to support the proposed cross-examination." *Scull*, 564 A.2d at 1164 (quoting *United States v. Pugh*, 141 U.S.App. D.C. 68, 71, 436 F.2d 222, 225 (1970)). This standard is a fairly lenient one, and any decision

about the adequacy of the proffer lies within the sound discretion of the trial court. *Brown v. United States*, 683 A.2d 118, 124–125 (D.C.1996). Finally, when challenging an adverse ruling on a proffer of witness bias, an appellant must show "that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.' " *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (citation omitted).

Appellant argues that he was not able to present to the jury his theory of defense, which was that the police planted the evidence allegedly found on or near him in retaliation for his pending civil suit, because the trial court limited his ability to cross-examine the government's witnesses. Before the trial began, defense counsel proffered to the court evidence about which he wished to cross-examine some of the government witnesses regarding bias. Counsel explained to the court, after the prosecutor objected, that in an earlier incident Officers Mason and Branch, who were also part of the search warrant team, came to appellant's home and broke his arm, and that as a result appellant filed suit.[4] Defense counsel stated:

> [B]ased on all of those factors, whether or not they say they knew the officers or not, whether or not they talked [to] the officers or not, it seems to us that a bias issue exists, and the Court should permit this and let the jury decide.... [T]he jury can sort out whether or not

4. At the conclusion of the suppression hearing, defense counsel asked the court "to take judicial notice of and accept into evidence Defendant's Exhibit No. 1 only for the purpose of this motion on the bias issue, which has to do with the suit that's filed against the

two officers." The court denied the request, but stated that the exhibit (not further identified) would be included in the record. Unfortunately, the exhibit is not in the record on appeal.

this information somehow got to people who were part of the arrest [team], and arrested the defendant.[5]

The court ruled:

> In this case there is no relevance at all because the officers that are testifying— each one of them now has told us that they had no idea about the prior incident, the notice or the lawsuit, on the day of the arrest of Mr. Howard in this case.... To allow testimony about that separate incident that these officers didn't even know about would be confusing, misleading, and prejudicial, and I'm not going to allow it.[6]

■ It appears to us that the court mistakenly applied a pre-trial credibility finding, on which it had relied to decide the issue of probable cause, to the separate determination of the trial-related issue of whether the defendant had proffered sufficient facts to warrant cross-examination on potential bias. At the suppression hearing, the court had concluded that Officer

Randolph, who prepared the search warrant application, did not know of the pending civil suit and had not been directed by Officer Branch or Officer Mason to get a search warrant for appellant's home, so the warrant was valid. This finding, however, did not foreclose the defense trial theory that the officers at the scene were biased because of the lawsuit or may have been improperly influenced by Officer Branch (who was in the room when the drugs were found on appellant) or Officer Mason (who was part of the search team), and intentionally implicated appellant even though (according to the defense) no drugs were actually found on his person. *Cf. Sullivan v. United States*, 404 A.2d 153, 160 (D.C.1979) ("[g]reat latitude is appropriately extended to a showing of a complaining witness' bias by means of cross-examination concerning that witness' pending lawsuit versus the defendant against whom he has testified" because the lawsuit

---

**5.** The court also precluded defense counsel from calling Officers Branch and Mason to testify during the defense case in chief. Defense counsel told the court after the suppression hearing, "I still want those two officers, Mason and Branch, to be here. Is the Court going to make a ruling as to whether or not I can have them as witnesses, based on what's occurred? We would still request that they be present in case I decide I want to call them." The prosecutor told the court that he would not be calling those officers in its case in chief, and then asked the court to exclude testimony about any prior incident involving Officers Branch and Mason. The court ruled:

> [I]t's not relevant to this case, to these facts. If somehow evidence comes out in the government's case in chief that these officers, the two officers were involved somehow in steering others toward narcotics, or pointing the finger toward this defendant for some other reason while on the premises, then that might change. But to the extent they all went in, they went to one part of the house where they encountered Lester Howard and weren't involved in seizing anything that's connected to this defendant.

I can't see any relevance to their testimony, and I won't allow that. Not because of efficiency, but because it's not relevant.

Appellant does not challenge this ruling on appeal.

**6.** The court was apparently under the mistaken impression that all of the officers testified at the suppression hearing that they did not know of appellant's civil suit until after the execution of the search warrant. Only two witnesses out of six at the hearing testified about their knowledge of the lawsuit, Officers Randolph and Brackett. Officer McCrary and Sergeant Gainey presented no testimony about whether they knew of the lawsuit or when they found out about it; hence the court could not have actually assessed the credibility of Sergeant Gainey or Officer McCrary as to their knowledge of the suit. In addition, Officers Branch and Mason were not questioned at the suppression hearing about their knowledge of the lawsuit, no doubt because they were parties to it; their questioning was limited to whether they directed the special employee to appellant's home or otherwise influenced the issuance of the search warrant.

is "relevant to a showing of ... his ill-will toward the defendant" (citations omitted)).

Although the trial court found, *at the suppression hearing*, that Officer Randolph was credible and did not know of the lawsuit at the time he obtained the search warrant or the at the time of its execution, and thus concluded that the warrant was valid, it was not up to the court to determine the credibility of witnesses *at trial* regarding their potential bias. *See Newman v. United States*, 705 A.2d 246, 259 (D.C.1997) ("In evaluating the reliability of the proffer ... the court must not seek to evaluate the reliability of the witness"). Despite the court's assessment of the officers' credibility in ruling on the validity of the warrant at the suppression hearing, it was error to rely on that credibility determination to preclude bias cross-examination at trial because "[c]onditioning bias cross-examination on the court's ability to assess the credibility of the source of the alleged motive runs too close to usurping the jury's function." *Brown v. United States*, 740 A.2d 533, 537 (D.C.1999).

■ At trial, defense counsel sought to cross-examine some of the police witnesses about their knowledge of the civil suit against the police department and to ask them whether that knowledge influenced the execution of the search warrant. Counsel proffered facts which suggested that the witnesses might be biased in the manner asserted: that Officers Branch and Mason had previously been involved in an incident in which appellant's arm was broken, that the same officers (from the Sixth District) were present at the execution of the search warrant which resulted in appellant's arrest, and that appellant had filed a civil suit against the police department, as well as Officers Branch and Mason. These facts supported at least "a well-reasoned suspicion" that the officers involved in the execution of the search warrant, all from the Sixth District, may

have had a motive to testify falsely, or at least to stretch the truth, regarding the seizure of drugs from appellant.

Since Sergeant Gainey, Officer Randolph, and Officer Brackett were all present when some or all of those drugs were recovered, the court should have allowed counsel to cross-examine the government witnesses *before the jury* to explore what they knew about the lawsuit and whether they were, during the search, influenced in any way influenced by that knowledge. Once counsel made his proffer, the credibility of the witnesses was for the jury to decide, and cross-examination about the lawsuit was appropriate. As the Supreme Court has said:

> We cannot speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted this line of reasoning had counsel been permitted to fully present it. But we do conclude that the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on [the witness'] testimony which provided "a crucial link in the proof ... of petitioner's act."

*Davis v. Alaska*, 415 U.S. 308, 317, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (citation omitted). The trial court's concern in this case about possible jury confusion was misplaced because "[a]ny potentiality of confusion to the jury may be eliminated by proper instructions." *Scull*, 564 A.2d at 1165 (footnote omitted).

Appellant has "state[d] a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness[es], and thereby 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the wit-

**1210**

ness[es].' " *Van Arsdall,* 475 U.S. at 680, 106 S.Ct. 1431. The trial court erred by confusing the search warrant determination with the adequacy of the bias proffer instead of considering the proffer separately, and thus improperly precluded relevant cross-examination as to bias.

█ Because the trial court's ruling prevented appellant from presenting his main defense theory, we cannot find harmless error under *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *See Van Arsdall,* 475 U.S. at 684, 106 S.Ct. 1431 (the denial of a defendant's opportunity to impeach a witness for bias is subject to *Chapman* harmless error analysis). The fact that the defense was allowed to present testimony by Lester Howard that he did not see any drugs recovered from appellant and that he and appellant were abused by the police does not alleviate the harm of prohibiting the relevant and distinct bias testimony about the witnesses' knowledge of the lawsuit. We reached a similar conclusion in *Scull,* in which we held that it was not harmless error for the trial court to preclude the cross-examination of witnesses as to relevant bias (fear of their own prosecution) even though it allowed other cross-examination of the same witnesses as to bias stemming from a different motivation. "Since the issue of this proposed cross-examination was entirely distinct from that allowed by the trial court, central to the jury's evaluation of the credibility of key witnesses, and admissible, its exclusion was constitutional error." 564 A.2d at 1166. *See also Davis,* 415 U.S. at 318, 94 S.Ct. 1105 ("While counsel was permitted

to ask [the witness] whether he was biased, counsel was unable to make a record from which to argue why [the witness] might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial"). Therefore, the error cannot be deemed harmless beyond a reasonable doubt.

**III**

█ Appellant also argues that the trial court should not have permitted Sergeant Gainey to testify about the results of the internal police investigation about the use of force against Lester Howard. He maintains that the admission of this testimony denied him a fair trial because he could not cross-examine the witnesses at the police department hearing.[7] On this point we find no error.

█ While cross-examining Sergeant Gainey, defense counsel elicited the fact that the police department had conducted an internal investigation of the earlier incident; the government responded on redirect by clarifying that the use of force was ultimately found to have been justified. Such remedial efforts are allowed under the doctrine of curative admissibility. *See Goines v. United States,* 905 A.2d 795, 800 (D.C.2006). That doctrine "provides that in certain circumstances the prosecution may inquire into evidence otherwise inadmissible, but only after the defense has 'opened the door' with regard to this evidence." *Mercer v. United States,* 724 A.2d 1176, 1192 (D.C. 1999). The doctrine is limited, however, and permits remedial evidence "only to the

7. At trial, when the prosecutor asked Sergeant Gainey, "Now the investigation actually exonerated the officers from any wrongdoing, is that correct?", defense counsel immediately objected, but without stating a reason. The court directed the prosecutor to rephrase his question: "You can ask him what was the result of the investigation." The prosecutor

did so, and defense counsel said, "Same objection," but nothing more. The court then said, "It's relevant. You asked about it on cross-examination, so the government can follow up in this way." On this record, we have no occasion to consider whether the question might have been objectionable on some other, unarticulated ground.

extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence." *Id.* (citation omitted).

■ Because defense counsel opened the door to evidence about the internal police investigation, it was not an abuse of discretion for the trial court to allow the government to ask further questions on redirect. Through its questioning, the government refuted the implication that Sergeant Gainey might be biased because of the investigation. Gainey's testimony on redirect was limited to clarifying that the police department routinely conducted such investigations when force was used by its officers, that he was not fearful of being implicated in any wrongdoing, and that the investigation concluded that the use of force in this instance was justified. When the government elicits testimony on a subject during redirect examination that the defense brought up during cross-examination, the defendant "cannot well complain of being prejudiced by a situation which [he] created," *Laney v. United States,* 54 App. D.C. 56, 60, 294 F. 412, 416 (1923), because "the error that occurred, if any, was invited by defense counsel." *Gonzalez v. United States,* 697 A.2d 819, 826 (D.C.1997); *see Parker v. United States,* 757 A.2d 1280, 1286–1287 (D.C. 2000) (citing *Gonzalez* and *Laney* ). Because defense counsel elicited testimony on the subject in the first instance during his cross-examination of Sergeant Gainey, the government was entitled on redirect to dispel any potential prejudice and to refute, if it could, any implication of bias.

## IV

For the reasons stated in part II of this opinion, the judgment of conviction is reversed, and this case is remanded for a new trial.

*Reversed and remanded.*