Opinion for the court by Associate Judge GLICKMAN.
Opinion by Associate Judge BECKWITH, concurring in part and concurring in the judgment, at page 1254.
Glickman, Associate Judge:
Kenneth Furr appeals his conviction for assault with a dangerous weapon (“ADW”).[1] He contends the trial court erred by excluding testimony about an internal Metropolitan Police Department (“MPD”) investigation that reportedly vindicated an officer whose testimony contradicted the complaining witness. In addition, Furr claims the trial court plainly erred by failing to intervene sua sponte when the prosecutor impugned that officer in her rebuttal argument. We conclude these claims lack merit and affirm Furr’s ADW conviction.
I.
The criminal charges in this case arose from appellant’s activities in the pre-dawn hours of August 26, 2011. Appellant, a police officer, was off duty at the time. In a CVS pharmacy at 400 Massachusetts Avenue, N.W., he encountered “Chloe,” a transgender female, and solicited her for sex.[2] She rebuffed him. Appellant then became embroiled in an altercation with Chloe’s friend, a man named Wallace Patterson. MPD Officer Edward Stewart, who moonlighted at the CVS as a private security guard, interrupted the two men and asked appellant to leave the premises. Appellant went to his car, which was parked nearby.
A few minutes later, Patterson left the CVS. He was accompanied by a man whom he identified at trial as Calvin Hogue. As they walked past appellant’s car, Patterson testified, appellant rolled down his window and shouted at him. Patterson challenged appellant to step out of his car. According to Patterson, appellant responded by retrieving a gun from the glove compartment and pointing it at Patterson. Appellant did not tell Patterson he was a police officer. *1248 This alleged conduct was the basis for appellant’s ADW conviction.
Patterson and Hogue returned to the CVS. They were met by Officer Stewart, who testified that he had stepped outside the store to “make sure everything was okay.” Patterson stated that appellant “had a gun.”[3] Stewart asked him whether he saw it. Here the two witnesses’ accounts diverged. Patterson testified he told Stewart that appellant had pointed the gun at him. He expected Stewart to “do his job” by effecting appellant’s arrest. Stewart, however, testified that he “tr[ied] to ascertain how [Patterson] knew [appellant] had a gun, whether he actually saw the weapon, whether the weapon was displayed, just any — what color the weapon was, anything, but ... [Patterson] wouldn’t give [him] that information, and he continued to walk away.” Stewart insisted that he “never received a report of a man pointing a gun.” This conflict in the testimony generated the principal issue before us in this appeal.
After speaking with Patterson, Officer Stewart approached appellant’s car and called for police backup, telling the dispatcher that a citizen had reported encountering “an individual that’s armed.” Appellant exited his car and immediately identified himself as a police officer. Feeling “relieved,” as he put it at trial, Stewart cancelled his request for backup. The two officers chatted for a few minutes before Stewart returned to the CVS. Stewart saw no gun in plain view and did not ask appellant whether he had a gun or what had just happened between him and Patterson. Patterson, who drove back to the CVS a little later with some companions, testified that he realized the security guard “didn’t do his job” because he evidently had not summoned the police to arrest appellant. The prosecutor’s echo of this statement in rebuttal is the subject of appellant’s second claim on appeal,
Patterson and his friends eventually located appellant and pursued him as he attempted to drive off and evade them. In a violent denouement several blocks from the CVS on Pierce Street, appellant — who did indeed have a gun — fired his weapon at his pursuers’ car, which then crashed into appellant’s own vehicle. Appellant continued shooting after the collision. Patterson fled as police arrived on the scene. Appellant faced additional assault charges arising from the shooting on Pierce Street, but he was acquitted of them at trial based on his claim of self-defense. Thus, the only conviction at issue in this appeal is the one for ADW based on appellant’s actions outside the CVS.
II.
Following appellant’s arrest, the MPD investigated not only his behavior, but also the performance of Officer Stewart after he received Patterson’s report of a gun. The inquiry reportedly concluded that Stewart acted appropriately under the circumstances. At trial, appellant attempted to present testimony about that inquiry from the officer who conducted it. Appellant’s primary claim on appeal is that the trial court abused its discretion by excluding this testimony.
A.
To find appellant guilty of an ADW outside the CVS, the jury needed to believe Patterson’s statement that appellant pointed a gun at him; no other evidence of the assault was presented.[4] But Officer Stew *1249 art’s testimony that Patterson never told him appellant displayed a gun contradicted Patterson and thereby undercut the credibility of his • accusation. The prosecutor tried to deal with this problem by showing that Stewart’s need to defend his own conduct from criticism and scrutiny supplied him with a motive to deny having learned that Patterson saw appellant brandish a gun.
Accordingly, in her direct examination of Stewart, the prosecutor elicited from him the fact that the MPD had investigated whether he took “appropriate police action” in response to Patterson’s report. Stewart confirmed that he was “no longer under investigation” at the time of trial. The prosecutor did not ask him about the outcome of the investigation. On cross-examination, though, declaring that he “did not have a complainant, and ... did not have a crime,” Stewart testified that the MPD investigation had “exonerated” him.
Defense counsel then sought to inquire into “the reason they said you were exonerated.” In response to the government’s objection, defense counsel told the court she wanted the jurors to understand that “the police had decided [Stewart] was correct” in his judgment of the situation.[5] The court sustained the objection to this line of inquiry, ruling that the defense had established “definitively” that the investigation had exonerated Stewart and that the reasons articulated for that determination were inadmissible hearsay.[6]
On re-direct, the government again brought up the MPD investigation. Stewart acknowledged that an adverse finding would have subjected him to serious discipline or possibly termination of his employment. Stewart agreed that when the investigator interviewed him, he was “essentially trying to establish that no crime had occurred.” The prosecutor then asked Stewart whether “it was based on what you told the [investigator] that ... you were exonerated?” The court sustained a defense objection to this question, and Stewart did not answer it. The prosecutor did not pursue the inquiry further and concluded her examination of the witness.
After a brief recess, however, defense counsel complained that the prosecutor’s unanswered question inaccurately implied that Stewart was cleared in the MPD investigation only because of his own self-serving statements. The court agreed that the question might have conveyed that impression. The prosecutor stated she had not intended that implication and did not oppose an appropriate curative measure to dispel it. There ensued a colloquy in which the court and counsel considered different curative options. The prosecutor initially proposed that the court strike the question. Defense counsel thought that insufficient and suggested a stipulation “list[ing] what [the investigation] involved.” The prosecutor commented that a written stipulation would “draw more attention to it than is really necessary” and proposed as an alternative that Stewart simply be recalled to the witness stand to “clarify” that *1250 the MPD investigation extended beyond his statement. Defense counsel expressed no objection to that alternative solution. (Counsel did not disagree with the prosecutor’s reservation about a stipulation or continue to press for one.) The court was satisfied that “it’s just fair to get out that there was more than just [Stewart’s] say-so that exonerated him.” Accordingly, cautioning that “we’re not going to get into all the subsidiary facts that went into it,” the court elected to allow the prosecutor to recall Stewart to the stand and ask him whether there were “other components” to the MPD investigation besides his own interview “and whether other witness statements were reviewed as well.”[7] Stewart confirmed there were. The prosecutor accepted the witness’s answer and moved on. Defense counsel raised no objections to this procedure and appeared satisfied with the prosecutor’s question and the witness’s answer. She did not request that Stewart be allowed to provide any additional or more specific information about the breadth of the investigation.
Later in the trial, however, the defense called MPD Lieutenant John Haines to the stand. When Haines identified himself as the officer who had investigated Officer Stewart’s “alleged misconduct,” the government objected and the court asked for a proffer of the witness’s testimony. Defense counsel responded that Haines would testify about “what things he considered” in the investigation (but without repeating what “anyone said,” which counsel conceded would be hearsay) and about “what conclusion he reached.” This testimony was necessary, counsel stated, because Stewart, in his testimony, “was basically guessing about the things that were considered,” while Haines “knows what was actually considered.”[8] The government disputed the relevance and admissibility of Haines’s testimony and argued that Stewart himself had corrected any misimpression that the MPD investigation considered only his account.
The court agreed with the government’s objections and ruled that Haines’s proffered testimony would not be relevant and that “whatever relevance this witness’s testimony might have ... is substantially outweighed by the potential for prejudice and misleading the jury [and] confusing the issues.”
B.
“We review a trial court’s decision to admit or exclude evidence for abuse of discretion. An evidentiary ruling by a trial judge on the relevancy of a particular item is a highly discretionary decision that will be upset on appeal only upon a showing of grave abuse.”[9] In addition, “[t]hat the evidence may be minimally relevant does not end our analysis. The trial judge has the discretion to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair preju *1251 dice.”[10] We recognize that “the evaluation and weighing of evidence for ... potential prejudice is quintessential^ a discretionary function of the trial court, and we owe a great degree of deference to its decision.”[11] In reviewing such rulings, “we must be mindful of context” and recognize that the trial court “virtually always is in the better position to assess the admissibility of the evidence in the context of the particular case before it.”[12]
For the following reasons, we conclude that the trial court in this case exercised its discretion carefully and appropriately, and certainly did not abuse its discretion, by excluding the proffered testimony of Lieutenant Haines.
First, Lieutenant Haines’s investigation of Officer Stewart was relevant and admissible at this trial for one purpose only: to show the existence of a motive for Stewart to deny that Patterson told him appellant displayed a gun. Only the fact that an investigation was pursued, with potential adverse consequences for Stewart, was probative of this motive; not what evidence Haines considered, how thoroughly he conducted his investigation, or what conclusions he reached. Haines’s findings regarding what Stewart was told and whether he properly performed his duties as a police officer in response to that information were not admissible in evidence to prove those facts because they were based on hearsay rather than Haines’s personal knowledge of what happened.[13] Testimony about the- information on which Haines based his conclusions would likewise have been inadmissible hearsay. Indeed, for the same reason, Stewart’s own testimony that he was “exonerated” by . Lieutenant Haines’s inquiry was not admissible to prove he acted appropriately; rather,, it was only permissible for the jury to hear about Stewart’s vindication as a precautionary measure to ensure that the jury did not draw an adverse inference from the mere fact that Stewart had been under investigation.[14]
Second, it would not have been appropriate to admit Haines’s testimony under the “curative admissibility” doctrine to allay prejudice to appellant’s defense from the prosecutor’s implication that Stewart’s exoneration was based solely on his own statement. The doctrine of curative admissibility “provides that in certain circumstances [one party] may inquire into evidence otherwise inadmissible, but only after [the other party] has ‘opened the door’ with regard to this evidence.”[15] Trial *1252 judges are enjoined to exercise caution and restraint before relying on the curative admissibility rationale, because “[t]he doctrine of curative admissibility is one dangerously prone to overuse,” and the idea that the one side might “open the door,” is often oversimplified.[16] “Opening the door is one thing. But what comes through the door is another. Everything cannot come through the door.”[17] Rather, “[introduction of otherwise inadmissible evidence under shield of this doctrine is permitted ‘only to the extent necessary to remove any unfair prejudice which might othér-wise have ensued from the original evidence.’ ”[18] In the present case, there was no,such necessity, for the posited implication of the prosecutor’s question was not unfairly prejudicial and, in any event, Haines’s testimony was not required to correct it. Hence the doctrine of curative admissibility was inapplicable.
The posited harmful implication of the prosecutor’s question was that the only evidence Lieutenant Haines considered in “exonerating” Officer Stewart was Stewart’s own, presumably self-serving, statement. Even if the jury drew this implication, however, it would not have resulted in unfair prejudice to appellant. The jury simply would have inferred that Haines did not conduct a thorough investigation, and accordingly the jury would have discounted the probative value of Haines’s “exoneration” of Stewart arid considered it only as establishing that the MPD investigation did-not result in a finding of misconduct on Stewart’s part. But as we have explained above, that was exactly what the jury was supposed to do anyway, because Haines’s findings were based on inadmissible hearsay. Appellant was not entitled to have the jury consider them for their truth. Thus, even if the prosecutor’s implication led the jury to treat the MPD investigation of Stewart as unreliable, and to attach no probative weight to his exoneration, appellant suffered no unfair prejudice.
Furthermore, even assuming the prosecutor’s implication was not innocuous, Haines’s proffered testimony was not necessary to dispel the potential harm. The court took other reasonable curative measures. At the outset of the trial, the court had instructed the jury that it “may only consider the evidence properly admitted during the trial,” which the court identified specifically as exhibits and sworn testimony. The court further explained that when it sustained an objection to a question, the jury “[was] not to guess or speculate as to what the witness might have said [b]ecause ... under the law ... the question is inappropriate.” The record provides no reason to think the jury disregarded these admonitions when the court sustained appellant’s objection to the question the prosecutor put to Stewart. “In the absence of any good reason to suppose otherwise, we presume the jury followed the court’s direction.” [19]
Beyond that, with appellant’s consent, and after careful and thoughtful consideration of the proposed alternatives,[20] the court settled on a suitable evidentiary “cure”: having the government recall Stewart to the witness stand, following the *1253 conclusion of its redirect examination and a recess, for the specific purpose of testifying that “other components,” including “other witness statements,” were considered in the MPD investigation of his conduct. The prosecutor elicited this testimony and did not attempt to challenge it. There was no suggestion of any kind that the prosecutor disagreed with it or that the jury had any reason to disbelieve it. On the contrary, to the jury it undoubtedly appeared that the prosecutor was being allowed to introduce testimony deemed to be important and truthful.[21] Appellant had no objection to this curative procedure and identified no deficiency in its implementation.[22] It was entirely reasonable for the trial court to conclude, as it did, that Stewart’s testimony sufficed to remove any unfair prejudice from the prosecutor’s earlier question and that nothing further needed to be done.
It also was entirely reasonable for the court to conclude that any possible relevance of Haines’s proffered testimony was substantially outweighed by “the potential for prejudice and misleading the jury, confusing the issues.” The proffered testimony would have been unfairly prejudicial to the prosecution and misleading to the jury because it would have exacerbated the risk that the jury would treat Haines’s “exoneration” of Stewart as a reason to credit Stewart and find that Patterson did not tell-him appellant brandished a gun. A further risk was that the proffered testimony would lead to a mini-trial over the adequacy and fairness of Haines’s investigation of Stewart and the reasonableness of his conclusions, which was not and should not have been the jury’s focus. The trial court’s recognition and consideration of these dangers demonstrates that it carefully exercised its discretion in excluding Haines’s testimony even if that testimony had some minimal relevance or might have been permitted as an additional curative measure.
In sum, by excluding the proffered testimony of Lieutenant Haines, “[t]he trial court merely prevented counsel from introducing an irrelevant, collateral, and potentially prejudicial issue into the trial.”[23] We *1254 hold that the court did not at all abuse its discretion in so doing, let alone “gravely” abuse it.
III.
Appellant also claims the trial court plainly erred by permitting the prosecutor to comment in rebuttal argument that Officer Stewart “didn’t do his job.” Appellant contends this remark was improper because the prosecutor knew the MPD had thoroughly investigated Stewart and “concluded the opposite,” viz., that Stewart was “doing his job” when he ceased his investigation of the report of a man with a gun upon ascertaining the man was a police officer. Appellant further contends the remark was improper because it was the prosecutor’s expression of her personal opinion about Stewart’s professional conduct.
We reject both contentions. Appellant did not object when the prosecutor argued as follows:
Officer Stewart told you he got a report of a man with a gun, and the moment that this man told him, I’m a police officer, he ceased investigation .... He had reported a gun ... [I s]ubmit to you that [Officer Stewart’s] testimony was colored by that. He didn’t do his job because if he would have done his job, the rest of the night wouldn’t have happened.
We consider the argument unobjectionable because it was fair comment on Stewart’s failure to investigate appellant’s encounter with Patterson and his possible testimonial bias resulting from the MPD’s investigation of that failure.[24] Lieutenant Haines’s opinion that Stewart did his job properly was neither admissible evidence of that fact nor binding on the government in any way; it thus did not preclude the government from arguing otherwise based on the admissible evidence at trial.[25]
IV.
The trial court did not abuse its discretion by excluding the proffered testimony of Lieutenant Haines or plainly err by not intervening in the government’s rebuttal argument. Appellant’s conviction for ADW is hereby

Affirmed.

. D.C. Code § 22-402 (2012 Repl.).

. Appellant was found guilty of solicitation for prostitution based on this conduct. He does not contest that conviction in this appeal.

. The trial court admitted this statement not for its truth, but for the non-hearsay purpose of explaining Officer Stewart’s subsequent actions.

. Patterson’s companion Hogue was not called to testify.

. As counsel elaborated, "The government brought this [the MPD investigation of Stewart] up and tried to leave it in the air as if there was something suspicious about his behavior, and I think the defense is entitled to get out that, in fact, what he did that night was appropriate. And so the simple — that the conclusion was that ... he did not have a complainant and he did not have a crime and, therefore, he was exonerated."

. The court rejected appellant's argument that the reasons articulated by the MPD for "exonerating” Stewart were admissible in evidence as an admission of a party opponent. Appellant has abandoned this argument on appeal.

.Before it decided to permit this inquiry, the court inquired whether Stewart knew about the other parts of the investigation. The prosecutor represented that Stewart did know what else was considered because he had received the final report of the investigation. The court then reviewed the investigation report to confirm what Stewart knew. -Defense counsel, who previously sought to ask Stewart to testify about the articulated reasons for his exoneration, did not dispute that Stewart knew what had been considered in addition to his own statement.

. Defense counsel’s assertion that Stewart was "guessing” was contrary to what the court earlier had been told about Stewart’s knowledge. See supra, note 7.

. Riddick v. United States, 995 A.2d 212, 216 (D.C. 2010) (internal quotation marks and citations omitted).

. Foreman v. United States, 792 A.2d 1043, 1049 (D.C. 2002) (citing Mercer v. United States, 724 A.2d 1176, 1184 (D.C. 1999)); see also Fed. R. Evid. 403.

. Foreman, 792 A.2d at 1049 (internal quotation marks omitted).

. Johnson v. United States, 960 A.2d 281, 294-95 (D.C. 2008) (internal quotation marks omitted).

. See, e.g., Young v. United States, 63 A.3d 1033, 1044 (D.C. 2013) ("An out-of-court statement offered in evidence to prove the truth of the matter asserted is hearsay whether the statement is quoted verbatim or conveyed only in substance; whether it is relayed explicitly or merely implied; whether the de-clarant is identified or not.”) (footnote omitted); Evans-Reid v. District of Columbia, 930 A.2d 930, 944 (D.C. 2007) ("Statements in a police report which are based on what the officer was told by others are just as much hearsay as if stated on the witness stand by the officer himself. Likewise inadmissible are conclusions and conjectures by the officer as to fault or lack of fault[.]”).

. See, e.g., Howard v. United States, 978 A.2d 1202, 1211 (D.C. 2009). It would have been advisable for the court to instruct the jury accordingly.

. Mercer, 724 A.2d at 1192 (quoting United States v. Young, 470 U.S. 1, 11, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)).

. Id. (quoting United States v. McClain, 440 F.2d 241, 244 (D.C. Cir. 1971)).

. Id.

. Id. (quoting United States v. Winston, 447 F.2d 1236, 1240 (D.C. Cir. 1971)).

. Muir v. District of Columbia, 129 A.3d 265, 275 (D.C. 2016),

. It is noteworthy that defense counsel did not propose calling Lieutenant Haines when the court was considering -the curative options.

. Moreover, there was nothing implausible about Stewart’s testimony. At trial the jury received other evidence bearing on Stewart’s conduct that Lieutenant Haines might have considered — for example, not only testimony of witnesses, but contemporaneous video surveillance footage of the street outside the CVS which showed Patterson’s encounter with appellant.

. Later in the trial, when appellant proffered Lieutenant Haines’s testimony, defense counsel asserted that Stewart was “basically guessing” about what Haines had considered in the investigation. Neither Stewart’s actual testimony nor anything else in the record supports that assertion, and there is no reason the jury would have thought Stewart was “guessing.” And for the reasons we have already given, the fact that Haines may have known what information he considered better than Stewart did was irrelevant.

. Grayton v. United States, 745 A.2d 274, 281 (D.C. 2000). The concurrence errs in stating that Howard v. United States, 978 A.2d 1202 (D.C. 2009), approved testimony "similar to” the testimony from Lieutenant Haines proffered by appellant in this case. Post at 1258; see also post at 1256 (stating that "[t]his court approved similar — and much more extensive-testimony in Howard”). Howard did not approve testimony about the nature of the MPD investigation such as appellant sought to present in this case. The testimony about an MPD investigation at issue in Howard “was limited to clarifying that the police department routinely conducted such investigations ... and that the investigation concluded that the use of force in this instance was-justified.” Id. at 1211. Nor is it accurate to characterize the testimony in Howard regarding the police investigation as "much more extensive” than in this case. Like the trial court in Howard, the court here allowed testimony as to the conclusion of the investigation. The only addi *1254 tional testimony in Howard was that the investigation was routine (a fact neither party in this case sought to elicit).

. See Irick v. United States, 565 A.2d 26, 36 (D.C. 1989) ("[T]he key inquiry is whether the attorney is commenting on the evidence, which he may do, or expressing a personal opinion, which is taboo. A comment will be within the acceptable range as long as it is in the general nature of argument, and not an outright expression of opinion.” (emphasis in original)).

. Of course, appellant's failure to object confines us to review for plain error, which requires him to show "egregious” prosecutorial misconduct that "so clearly prejudiced his substantial rights as to jeopardize the fairness and integrity of his trial.” Id. at 32. Appellant does not come close to making such a showing.