Beckwith, Associate Judge,
I concur in the judgment and in the court’s holding that the trial court did not abuse its broad discretion in excluding Lieutenant Haines’s testimony about the “exoneration” of Officer Stewart, because I agree that the trial court had, with the arguable acquiescence[1] of Mr. *1255 Furr’s counsel, already furnished a remedy for the prejudice stemming from the government’s questions about the misconduct investigation and could properly have concluded that further testimony on the matter would significantly risk “misleading the jury [and] confusing the issues.” Ante at 1253. I write separately to express my disagreement with the court’s suggestion that the trial court would have abused its discretion had it gone the other way and allowed Lt. Haines’s testimony under the curative-admissibility doctrine.[2] Ante at 1251-52.
The essential problem with the court’s analysis on this point is that it fails to fully account for the prejudice to Mr. Furr resulting from the prosecutor’s questions about the investigation into Officer Stewart’s possible misconduct. As the court acknowledges, Officer Stewart’s testimony that Mr. Patterson did not report Mr. Furr pointing a gun at him was critical to Mr. Furr’s defense. Ante at 1248-49. And this testimony was impeached when the prosecutor elicited testimony from Officer Stewart that “as a result of [his] encounter with [Mr. Furr], [he was] ... under investigations [sic] with the Metropolitan Police Department.” The testimony suggested that Officer Stewart had a motive to falsely deny — both to the MPD investigators and in court — that Mr. Patterson had reported Mr. Furr pointing at a gun at him. Had the MPD investigators concluded that such a report had been made, Officer Stewart’s undisputed failure to take action could have resulted in discipline.
In addition to this impeachment theory, which the government did not develop in its direct questioning of Officer Stewart,[3] there is another conclusion the jury may have taken away from this line of questioning. The testimony about the misconduct investigation suggested that Officer Stewart may have committed misconduct — that is, that he had acquired evidence that Mr. Furr had pointed a gun at Mr. Patterson yet had failed to act. The trial court recognized this latter implication, noting in a bench conference that “the government brought it out as if [Officer Stewart] had done something wrong.”
The impeachment use of the testimony about the misconduct investigation involves a proper inference. This court has repeatedly held that evidence that a witness is or was under investigation is admissible if probative of the witness’s motive to testify falsely or at least shade his or her testimony. See, e.g., Smith v. United States, 26 A.3d 248, 261 (D.C. 2011). But the non-impeachment use of the testimony as evidence that Officer Stewart engaged in-misconduct relies on an improper infer *1256 ence. The fact that a person is under investigation is, like the fact that a person has been accused, arrested, or charged with a crime, not reliable evidence that the person committed misconduct and runs the risk of being given undue weight by the jury.[4] Cf. 1 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 4:31 (4th ed. 2016) (“Evidence of prior arrests or charges should not itself be admitted ... [because] neither one is sufficiently probative on the basic question whether ... any ... underlying act occurred.”).
Mr. Furr did not seek to have the testimony about Officer Stewart’s misconduct investigation excluded as unfairly prejudicial or request that the trial court give a limiting instruction. Instead, he sought to blunt the prejudicial effect of the testimony by eliciting testimony from Officer Stewart on cross-examination that he had been “exonerated.” The government did not object to this testimony, but had it done so, the trial court could properly have overruled the objection under the doctrine of “curative admissibility” or “opening the door.” Howard v. United States, 978 A.2d 1202, 1210 (D.C. 2009); Gordon v. United States, 783 A.2d 575, 586-87 (D.C. 2001); see also 1 Mueller & Kirkpatrick, supra, § 1:12 (explaining that even the proper admission of evidence “may open the door to counterproof that would otherwise be excludable under various doctrines”). This is because the testimony about Officer Stewart’s exoneration went no further than was “necessary to remove any unfairly] prejudicial]” implication of Officer Stewart’s earlier testimony that he was suspected of wrongdoing in connection with this ease. United States v. Winston, 447 F.2d 1236, 1240 (D.C. Cir. 1971) (citation omitted).
This court approved similar — and much more extensive — testimony in Howard, 978 A.2d 1202. In that case, the defendant sought to impeach a police officer by asking on cross-examination whether there had ever been “an internal police investigation regarding the use of force against” the defendant. Id, at 1206. The officer responded that there had been a “standard internal investigation.” Id. On redirect, the trial court allowed the prosecutor to elicit testimony from the officer “about the ‘standard procedure’ followed in police use-of-force investigations,” which included “the fact that such investigations occur as a matter of course,” that he “was not a subject of the investigation,” and that “the investigation concluded that the use of force was justified.” Id. In rejecting the defendant’s claim on appeal that this testimony was improper, this court explained that “[b]ecause defense counsel elicited testimony on the subject in the first instance during his cross-examination ..., the government was entitled on redirect to dispel any potential prejudice ....” Id. at 1211; see also id. (“When the government elicits testimony on a subject during redirect examination that the defense brought up during cross-examination, the defendant cannot well complain of being prejudiced by a situation which he created .... ” (internal quotation marks, brackets, and citation omitted)). That reasoning would apply in the present case with even stronger force, in light of Mr. Furr’s con *1257 stitutional right to present a complete defense. Cf. Williams v. United States, 642 A.2d 1317, 1322 (D.C. 1994) (explaining that the “right [of a defendant] to question a government witness about a current adversarial relation to law enforcement enjoys constitutional protection” but that the government does not have a similar right to probe whether a witness is “fired by anti-government hostility” as a result of such an “adversarial relation”).
Thus, Officer Stewart’s testimony about the “exoneration” was wholly appropriate under the curative-admissibility doctrine. On redirect, however, the prosecutor partially undermined this curative testimony, asking Officer Stewart whether he agreed that “it was based on what [he] told the lieutenant that ... [he was] exonerated.” The trial court sustained an objection to this question, yet both of the parties and the trial court recognized that the unanswered question implied that the Officer Stewart’s exoneration was based exclusively or primarily on his own statement.[5] As the court summarizes, the parties and the trial court discussed several options to rectify this false impression, and the trial court ultimately decided that Officer Stewart should be asked whether any “other components” besides his own statement were considered in the investigation. Ante at 1249-50; see also supra note- 1. In making this determination, the trial court was implicitly relying on the curative-admissibility doctrine: Officer Stewart’s testimony about whether the investigation considered factors other than his own statement would not have been admissible had the government not opened the door by asking about the investigation and by undermining the defense’s earlier curative .efforts. The trial court noted, in fact, that the government “asked the question which ... did raise .the issue that somehow it was [Officer Stewart’s] statement alone which constituted why his lieutenant exonerated him.”
*1258 The trial court could just as properly have exercised its discretion to permit curative testimony by Lt. Haines. Testimony by Lt. Haines about the factors considered in the investigation would ordinarily have been irrelevant and possibly also inadmissible on other grounds.[6] But the trial court could have admitted the testimony under the curative-admissibility doctrine to remedy the misimpression created by the government’s question about whether Officer Stewart’s exoneration was based on his own statement and to mitigate whatever remaining unfair prejudice had resulted from the government’s initial questioning about the investigation. If Lt. Haines’s testimony were properly circumscribed — limited, for instance, to listing the factors considered in the investigation — it would not have gone beyond what was necessary to remedy the prejudice.[7] See Howard, 978 A.2d at 1211 (approving testimony similar to that proffered by Mr. Furr in the present case). Counsel for Mr. Furr did not raise this option during the discussion about the remedy, however, and the trial court thus had no occasion to afford this particular remedy at that time.
Instead, based on the trial court’s ruling, the prosecutor elicited the following testimony from Officer Stewart:
Q. Officer Stewart, were you interviewed as part of your investigation with regard to your misconduct on August 26, 2011?
A. Yes. That morning, yes.
Q. And are you aware as to whether there were other components to that investigation, and whether other witness statements were reviewed, as well?
A. Yes.
Officer Stewart’s responses were arguably not sufficient to remedy the prejudice generated by the prosecutor’s initial questioning about the investigation and the prosecutor’s unanswered question about whether Officer Stewart’s exoneration was based on his own statement. Most importantly, the government laid no foundation for the latter of these two questions, and it is thus probable that the jury viewed Officer Stewart’s response that he was *1259 “aware” of “other components” as speculative and self-serving. Given that the cure was arguably deficient, and given Mr. Furr’s constitutional right to present a defense, the trial court could have exercised its discretion and granted Mr. Furr’s later request to permit Lt. Haines to testify. See Howard, 978 A.2d at 1211. Because, however, Mr. Furr’s counsel did not express any concern about the initial cure with a contemporaneous objection and because the cure was not wholly ineffectual, I agree with the court that the trial court did not abuse its discretion in excluding the testimony. See ante at 1252-58.
Finally, the court’s resolution of Mr. Furr’s prosecutorial misconduct claim warrants brief comment. See ante at 1252-53. The court correctly holds that the trial court did not plainly err in declining to respond sua sponte to the prosecutor’s argument, during rebuttal, that Officer Stewart “didn’t do his job.” The prosecutor’s argument paraphrased Mr. Patterson’s testimony and thus was a fair characterization of the trial evidence. But it also contradicted the result of the MPD investigation into Officer Stewart’s conduct. The defense had sought to have evidence about this investigation admitted following the prosecutor’s initial questioning on the subject, but the trial court had excluded this evidence at the government’s request. Given this context, the prosecutor’s argument was not completely “unobjectionable,” ante at 1254, and the trial court would have acted within its discretion in giving a curative instruction had the defense made a timely objection. See Williams v. United States, 877 A.2d 125, 129 (D.C. 2005) (“[T]he prosecution [has a] duty to guard against inviting inferences of fact by a jury arguably contrary to evidence it has succeeded in having excluded.”).
Notwithstanding the foregoing reservations, I concur in the court’s opinion in all other respects and concur in the judgment.

. The record does not bear out the court’s characterization of defense counsel as having "consented]” to the trial court’s remedy. Ante at 1252-53. Both Mr. Furr and the prosecutor proposed remedies for the prosecutor’s problematic unanswered question. The trial court ultimately went with one of the prosecutor’s proposed remedies, and although Mr. Furr’s counsel did not explicitly voice opposition at *1255 that tíme, neither did she affirmatively consent.

. This issue is a collateral one, as the question properly before us is whether the trial court abused its discretion in excluding the evidence, not the very different question — different because a “decision-maker exercising discretion has the ability to choose from a range of permissible conclusions” — whether it would have abused its discretion had it admitted the evidence. Johnson v. United States, 398 A.2d 354, 361 (D.C. 1979); see id. at 362 ("[T]he appellate court, in its review capacity, does not render its own decision of what judgment is most wise under the circumstances presented.”). Because it is the focus of the court’s analysis, however, see ante at 1251-52, the issue warrants discussion.

. Only on redirect — after the defense had asked Officer Stewart about the "exoneration” and after a bench conference on the appropriate scope of testimony about the misconduct investigation — did the prosecutor elicit testimony that when Officer Stewart made his statement to the MPD investigators, his goal was “essentially ... to establish that no crime [hád] occurred.” The prosecutor at that time had Officer Stewart explain the possible disciplinary consequences to him of a finding of misconduct.

. If this were not so, there would be.no defensible basis for precluding testimony about the result of the investigation and we would therefore have to conclude that the trial court erred in excluding Lt. Haines’s testimony/ To the extent that evidence that a person is or was under investigation is competent evidence that the person has committed misconduct, the outcome of the investigation should also be considered competent evidence on this point, as it is even more reliable — absent reason to believe that the investigation was bungled or corrupted.

. The trial court recognized the prejudicial nature of the unanswered question and the need for a cure. This court, however, asserts that at most the unanswered question "would have [caused the jury to] infer[] that [Lt.] Haines did not conduct a thorough investigation, ... discount[ ] the probative value of [Lt,] Haines's ‘exoneration’ of [Officer] Stewart[,] and consider[] it only as establishing that the MPD investigation did not result in a finding of misconduct on [Officer] Stewart’s part.” Ante at 1252. The court contends that "that was exactly what the jury was supposed to do anyway” and that Mr. Furr "was not entitled to have ... the jury consider [the finding of no misconduct] for [its] truth.” Ante at Í252. Thus, the court concludes, Mr. Furr was not entitled to rely on the curative-admissibility doctrine.
The court’s analysis fails to account for the fact that the initial testimony about the investigation implied that the MPD had good reason to believe that Officer Stewart had engaged in misconduct. The jury could reasonably have thought that the MPD would not have initiated an investigation unless it had suspected wrongdoing, especially given the absence of testimony about the relevant MPD policies. The trial court could have found that the testimony by Officer Stewart that he was ultimately "exonerated” by the MPD — without testimony about the investigation’s thoroughness or the evidentiary standard applied — was insufficient to defeat such an inference. And even if the trial court thought that the testimony had initially been sufficient in this regard, the trial court could have found that the testimony had been rendered impotent by the unanswered question implying that the investigation had been a sham — that the MPD investigators had perfunctorily cleared Officer Stewart upon consideration of his own self-serving statement. I therefore see no persuasive reason to disagree with the trial court's assessment that a further cure was required, especially given that the trial court is, as this court-acknowledges, "virtually always in [a] better position [than this court] to assess the admissibility of ... evidence in the context of the particular case before it.” Ante at 1251 (quoting Johnson v. United States, 960 A.2d 281, 294-95 (D.C. 2008)).

. The court says that “[t]estimony about the information on which [Lt.] Haines based his conclusions would ... have been inadmissible hearsay.” Ante at 1251. The court does not elaborate on this point or cite relevant authority, and it is doubtful that the hearsay rule would have been violated unless Lt. Haines had described the content of the information or the conclusions that he drew from it. See ante at 1251 n,13.

. Further, although it was not expressly argued in the trial court, Lt. Haines’s testimony about the factors considered in the investigation also could have helped to rebut the government’s legitimate impeachment theory that Officer Stewart had a motive to lie in order to avoid discipline. If Officer Stewart had believed that the investigators would be considering evidence from a variety of sources, his motive to lie would arguably have been diminished because he would have been aware of a higher likelihood that his lies would be ineffective and of a possibility that the lies could backfire and be used as an aggravator to justify a harsher sanction. The real question in assessing Officer Stewart’s motive is what Officer Stewart knew, but Lt. Haines’s testimony on the investigation is indirect evidence of what Officer Stewart knew about it and could have reinforced Officer Stewart’s testimony on the matter. This is a more attenuated theory of admissibility than the one set forth in the text above, but it is perhaps sufficient. The general rule is that "[i]f ... evidence offered conduces in any reasonable degree to establish the probability or improbability of the fact in controversy, it should go to the jury.” Dockery v. United States, 746 A.2d 303, 307 (D.C. 2000) (quoting Home Ins. Co. v. Weide, 78 U.S. (11 Wall.) 438, 439, 20 L.Ed. 197 (1870)). And although there would have been a risk that the jury would use this evidence for an improper purpose, this concern was also present — perhaps to a greater degree — in the initial testimony elicited by the government about the investigation.