*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-CF-450

IRIK C. WYNN, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF3-17539-16)

(Hon. Maribeth Raffinan, Trial Judge)

(Argued December 6, 2018                    Decided April 9, 2020)

*Gregory M. Lipper* for appellant.

*Elizabeth Gabriel*, Assistant United States Attorney, with whom *Jessie K. Liu*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, *Nicholas P. Coleman*, and *Natasha Smalky*, Assistant United States Attorneys, were on the brief, for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and GLICKMAN and BECKWITH, *Associate Judges*.

BLACKBURNE-RIGSBY, *Chief Judge*:  Following a jury trial, appellant Irik C.

Wynn was convicted of assault with a dangerous weapon ("ADW"), D.C. Code § 22-

402 (2019 Supp.), of complainant Kevin Smith.[1] Appellant was tried jointly with codefendant Michael Benjamin, whose motion for acquittal was granted at the conclusion of the government's case. The government's evidence at trial included Smith's testimony and a redacted interview between codefendant Benjamin and a Metropolitan Police Department ("MPD") detective after Benjamin's arrest, which was introduced only against Benjamin. On appeal, appellant argues that the trial court erred in (1) admitting the redacted interview, and (2) preventing him from cross-examining Smith on potential bias. We hold that the trial court erred in admitting the redacted interview in violation of appellant's Sixth Amendment right to confrontation and Super. Ct. R. 14 ("Rule 14"), and that the error was not harmless. We also hold that the trial court did not abuse its discretion in limiting appellant's cross-examination of Smith. We reverse appellant's convictions and remand for a new trial.

---

[1] The jury acquitted appellant of one count of assault with significant bodily injury, D.C. Code § 22-404.01 (2019 Supp.), and two counts of possession of a firearm during a crime of violence, D.C. Code § 22-4504(b) (2019 Supp.).

## I. Factual and Procedural Background

Appellant and codefendant Benjamin were charged with assaulting Smith on October 20, 2016. The government's theory at trial was that the assault was motivated by a drug debt Smith owed the two men. Smith testified that he regularly purchased synthetic marijuana on credit from both appellant and Benjamin and that, at the time of the assault, he owed both of them money. Smith also testified that, on the day of the assault, he and Benjamin argued over his drug debt and agreed that Smith would pay the debt in two days. After their argument, according to Smith, Benjamin left in his car. Smith testified that, approximately 20 to 30 minutes later, appellant approached Smith near the corner of 57th and East Capitol Streets, carrying what Smith believed to be a weapon. Smith testified that appellant asked him, "[W]here is the money that you owe me[?]" before hitting him on the head with a gun multiple times. He also testified that Benjamin was watching the assault from the corner.

Following his arrest, Benjamin gave a recorded interview to MPD Detective Chad Howard. In the interview, Benjamin referenced appellant by his given name and nickname, "E." Benjamin admitted to confronting Smith about the debt but denied apprising appellant of Smith's location or calling appellant after his argument

with Smith. After Detective Howard told Benjamin that the police had his cellphone records, Benjamin acknowledged that his cellphone called appellant on the day of the assault, first stating that he called appellant but appellant did not answer, then suggesting that a third party used his cellphone to call appellant.

Appellant and Benjamin were indicted on January 25, 2017, for the assault on Smith. Before the indictment was filed, appellant filed a motion for severance. Appellant asserted that the government's introduction at their joint trial of Benjamin's interview with Detective Howard would violate his Sixth Amendment Confrontation Clause right. Because Benjamin did not intend to testify, appellant contended, Benjamin's statements would be "extremely prejudicial" under *Bruton v. United States*, which provides that, in a joint criminal trial, the admission of a nontestifying codefendant's statement that implicates a defendant violates the defendant's right to confrontation. 391 U.S. 123, 126 (1968). Appellant argued that severance was necessary under the Confrontation Clause, as well as Super. Ct. R. 14 ("Rule 14"), which provides that "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant . . . the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." After a hearing, the trial court denied appellant's motion and allowed the government to introduce the interview

with redactions, replacing references to appellant with neutral terms such as "he," "him," "the other guy," and "the other dude." At trial, the redacted interview was read to the jury by government counsel and Detective Howard.

Also at trial, appellant's counsel sought to cross-examine Smith on two issues: (1) a recent prior assault on Smith in the same neighborhood by a man named Cory, and (2) additional debts owed by Smith to others in the community. With respect to the incident with Cory, appellant's counsel denied that he was pursuing a *Winfield* defense,[2] even though he explained that cross-examination on those issues would show more than a "vague idea that somebody else is responsible," because it would show that there was "an actual person and an actual event." The trial court noted that even though appellant was "not necessarily saying that Cory was the one who attacked him on October 20," appellant sought the testimony "to show that there were other people who had a motive to assault the complaining witness and could have been responsible instead of Mr. Wynn and Mr. Benjamin." The trial court ruled

---

[2] *Winfield v. United States*, 676 A.2d 1, 5 (D.C. 1996) (en banc) ("[T]he trial judge ordinarily may exclude evidence of third-party motivation unattended by proof that the party had the practical opportunity to commit the crime, including at least inferential knowledge of the victim's whereabouts."); *see also Gethers v. United States*, 684 A.2d 1266, 1271 (D.C. 1996) (holding that the proponent of a *Winfield* theory must establish "a reasonable possibility that an actual person other than the defendant committed the crime or was otherwise responsible for it, not just a hypothetical, unidentified person who may have had a motive").

that the proffer "that someone else committed the assault," suggesting "a hypothetical unidentified person who may have had his own motive for the attack was responsible," was "exactly what *Gethers* prohibits." To the extent appellant wanted to name Cory as Smith's possible assailant, the trial court concluded that the evidence would be prohibited under *Winfield* "without a proffer that Cory had both a motive and practical opportunity to commit the offense." The trial court similarly denied appellant's request to cross-examine Smith about his alleged community debts after appellant failed to proffer how the testimony would be relevant.

After the government rested its case, appellant and Benjamin moved for judgment of acquittal. The trial court granted Benjamin's motion and denied appellant's motion. At the conclusion of the trial, the trial court instructed the jury to disregard Benjamin's interview with Detective Howard in considering the case against appellant. During its deliberations later that day, the jury sent a note asking the court, "[W]hat portion of [D]etective Howard's time on the witness stand as a witness for the prosecution can we consider?" The trial court responded in writing and informed the jury, again, that it was not to consider any substantive part of Detective Howard's testimony as the government's witness, but that it was allowed to consider Detective Howard's testimony when he was called as appellant's

witness.[3] The jury convicted appellant of ADW, but acquitted him of the remaining charges. This appeal followed.

## II. Legal Standard

## A. Extrajudicial Statements Under the Confrontation Clause and Rule 14

The Sixth Amendment's Confrontation Clause provides a criminal defendant with the right "to be confronted with the witnesses against him," including the right to cross-examine those witnesses. U.S. Const. Amend. VI; *see Smith v. United States*, 180 A.3d 45, 51 (D.C. 2018). The introduction of "incriminating

---

[3] The trial court responded to the jury with the following:

> The only portion of the testimony of Detective Howard that you should consider, when he was called by the government as a witness and cross-examined by Mr. Benjamin's lawyer, Ms. Jean-Baptiste, is the testimony that related to the detective's name, where he worked, and what district he worked in. The remainder of his testimony related to the statement of Mr. Benjamin, which you have been instructed you should not consider as part of the evidence against Mr. Wynn. However, the testimony of Detective Howard when called by the defense, cross-examined by the government, and re-directed by defense counsel, is part of the evidence that you may consider in this case.

extrajudicial statements of a codefendant" who renders himself unavailable for cross-examination by asserting his Fifth Amendment right not to testify violates the defendant's right to confrontation. *Bruton*, 391 U.S. at 135–36; *Thomas v. United States*, 978 A.2d 1211, 1222–23 (D.C. 2009). "[A] major reason underlying the constitutional confrontation rule is to give a defendant charged with crime an opportunity to cross-examine the witnesses against him." *Bruton*, 391 U.S. at 126 (citation omitted). That opportunity is absent as to incriminating extrajudicial statements of a codefendant admitted in a joint trial when, as is typical, the codefendant does not testify. *Id.* at 135. Additionally, under Rule 14, the trial judge has a "continuing duty to take adequate steps to reduce or eliminate any prejudice arising from joinder." *Thomas*, 978 A.2d at 1223 (quoting *Carpenter v. United States*, 430 A.2d 496, 503 (D.C. 1981) (en banc)). In *Carpenter*, we held that Rule 14 requires the trial court to "take appropriate steps to minimize the prejudice inherent in codefendant confessions[,] which are inadmissible against the nondeclarant defendant." 430 A.2d at 502.

The issue in these circumstances is whether there was a "substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining [appellant's] guilt." *Bruton*, 391 U.S. at 126; *see also Gray v. Maryland*, 523 U.S. 185, 190 (1998) ("[T]here are some contexts in which

the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." (quoting *Bruton*, 391 U.S. at 135)); *Thomas*, 978 A.2d at 1233.

The remedial options—whether under the Confrontation Clause or Rule 14—are the same:

> [U]nless the government agrees to forgo any use of the statement, it must be redacted to eliminate all incriminating references to the co-defendant, or the co-defendant's motion for severance must be granted—whether or not the defendant who made the statement takes the stand and testifies.

*Thomas*, 978 A.2d at 1224 (citation and internal quotation marks omitted).[4]  Where redactions are feasible, severance is not required.  *Carpenter*, 430 A.2d at 501–02. The Supreme Court in *Bruton* recognized that, in the context of joint trials, a jury instruction to disregard a nontestifying codefendant's statement incriminating a defendant is an "[in]adequate substitute for [the defendant's] constitutional right of

---

[4] *See also Carpenter*, 430 A.2d at 505 ("Yet, in a certain, limited class of cases, where the references to the nonconfessing defendant are so intertwined within the confessing defendant's statement that redaction is impracticable and the references are not significantly incriminating, it may be appropriate for the trial court, after weighing the alternatives, and recognizing the desirability of excluding inadmissible evidence, to admit the statement with limiting instructions." (footnote omitted)).

cross-examination." 391 U.S. at 137. The Supreme Court refined this rule in *Richardson v. Marsh*, holding that if an extrajudicial statement is not incriminating on its face and only becomes incriminating when linked with other evidence introduced at trial, then the statement is properly admitted if the defendant's name and any reference to the defendant's existence are eliminated and the jury is properly instructed. 481 U.S. 200, 208–09, 211 (1987). Then in *Gray*, the Court held that the replacement of a name with "an obvious blank space," a word like "deleted," or symbols or other similarly "obvious indications of alteration" are prohibited by the Sixth Amendment. 523 U.S. at 192. We have observed that, taken together, these cases "instruct that a defendant's extrajudicial statement normally may be admitted in evidence in a joint trial . . . so long as the statement, as redacted if necessary, does not incriminate a non-declarant co-defendant on its face, either explicitly or by direct and obvious implication," and there is a sufficient limiting instruction. *Thomas*, 978 A.2d at 1235 (emphasis omitted). Such substitutions "must be accomplished artfully, so as not to indicate to the jury that the statement originally contained actual names." *Id*. at 1237; *see also Gray*, 523 U.S. at 192–95. A nonfacially incriminating statement is generally admissible if the redactions replace names with nonspecific pronouns like "we" or "he," "even where there was only one accomplice and only one co-defendant is on trial with the declarant." *Thomas*, 978 A.2d at 1237. The

necessity and sufficiency of the redactions are legal questions that this court reviews *de novo*. *Id.* at 1226.

Beyond redactions, the trial court must ensure that the statement does not facially implicate the defendant, either through the "circumstances surrounding the making of the extrajudicial statement . . . when, to whom, and in whose presence it was made, for example," *id.* at 1235, or through extrinsic evidence of the nondeclarant defendant's identity, such as a "nickname" or "specific description." *Gray*, 523 U.S. 195. We distinguish extrinsic evidence of the codefendant's *identity*, which is unacceptable under *Bruton*, from extrinsic evidence of the codefendant's *guilt*, which raises no *Bruton* issues. *Compare Thomas*, 978 A.2d at 1236 (noting that a jury, upon learning that the declarant was standing next to the codefendant when he said "[w]e robbed the bank," could understand that "we" clearly included the codefendant), *and Gray*, 523 U.S. at 193 ("[T]he jury will often realize that [a] confession," in which the nonconfessing defendant's name is replaced with the word "deleted" or "deletion," "refers specifically to the [nonconfessing] defendant."), *with Richardson*, 481 U.S. at 208 (holding that codefendant's confession to a murder, which "was not incriminating on its face," did not violate the nonconfessing defendant's right to confrontation when it incriminated him after being linked to evidence introduced later at trial); *see also Matthews v. United States*, 13 A.3d 1181,

1187 n.5 (D.C. 2011) ("The context in which a statement is made, however, is different from the statement in the context *of the trial* in which other admissible evidence is produced."). Redactions, however, can only function when the government "does not blatantly link the defendant to the deleted name." *Gray*, 523 U.S. at 193.

We subject *Bruton* violations to the test established in *Chapman v. California*, 386 U.S. 18 (1967), "to determine if they are harmless beyond a reasonable doubt." *(David B.) Johnson v. United States*, 883 A.2d 135, 141 (D.C. 2005) (citation omitted). Under *Chapman*, the error is harmless if the government can demonstrate "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." 386 U.S. at 24. Put differently, we must determine whether there is a "reasonable possibility" that the error "might have contributed to the conviction." *See id.* (noting "little, if any, difference" between "reasonable possibility" and requirement that the government prove beyond a reasonable doubt that the constitutional error did not contribute to the conviction).

## B. Cross-Examination for Bias

A defendant's Sixth Amendment right to confrontation "necessarily includes the right to cross-examine," *Grayton v. United States*, 745 A.2d 274, 279 (D.C. 2000) (citation omitted), which is "an important means of testing the credibility of government witnesses by exposing any biases or reasons for the witness not telling the truth," *McCray v. United States*, 133 A.3d 205, 232 (D.C. 2016) (citation omitted). The "complete denial of the opportunity to cross-examine a witness as to bias" violates a defendant's Sixth Amendment right to confrontation. *Blades v. United States*, 25 A.3d 39, 42 (D.C. 2011) (citation omitted). In such circumstances, "we may only affirm if we are convinced that the error was harmless beyond a reasonable doubt." *(Marques A.) Johnson v. United States*, 118 A.3d 199, 204 (D.C. 2015) (quoting *Clark v. United States*, 639 A.2d 76, 81 (D.C. 1993)).

However, before pursuing cross-examination suggesting bias, a defendant must "lay a foundation sufficient to permit the trial judge to evaluate whether the proposed question is probative of bias." *Blades*, 25 A.3d at 42. (citation omitted). The Confrontation Clause "guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Gardner v. United States*, 140 A.3d 1172,

1191 (D.C. 2016) (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)).  A defendant must proffer facts that "support a genuine belief that the witness is biased in the manner asserted, or at least a well-reasoned suspicion rather than an improbable flight of fancy to support the proposed cross-examination." *Howard v. United States*, 978 A.2d 1202, 1207 (D.C. 2009) (citation and internal quotation marks omitted).  The notion that "the Sixth Amendment permits skeptical questioning aimed at probing for the truth, notwithstanding the lack of a good-faith basis for an accusation of bias, has no support in the law." *Brown v. United States*, 683 A.2d 118, 125 (D.C. 1996) (citation omitted); *(Irving W.) Johnson v. United States*, 418 A.2d 136, 140 (D.C. 1980) (noting that complete preclusion of cross-examination for bias violates a defendant's confrontation right, but only "assuming an appropriate proffer" has been made).  "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Gardner*, 140 A.3d at 1191.  A proffer's adequacy "lies within the sound discretion of the trial court." *Howard*, 978 A.2d at 1207.

## III.    Discussion

## A. The Redacted Interview

Detective Howard's preceding testimony impermissibly linked Benjamin's redacted statements to appellant in violation of *Bruton* and *Carpenter*. We thus hold that admission of the redacted interview was error and that the error was not harmless.

Just before the jury heard Benjamin's redacted testimony, the government elicited the following testimony from Detective Howard:

> GOVERNMENT: Now, before we get to the transcript itself during the course of the interview with defendant Benjamin. Did he indicate whether he knew an individual by the name of Irik Wynn or E?
>
> DETECTIVE HOWARD: He did.
>
> GOVERNMENT: And what did he indicate about that?
>
> DETECTIVE HOWARD: He indicated that he knew E from the area of Clay Street or the area that he frequents Central Avenue. From the area.
>
> GOVERNMENT: And at this point, Your Honor, if I may I'd like to hand Government's Exhibit 48 back to the detective. May I approach?
>
> THE COURT: Yes.
>
> GOVERNMENT: Detective, at this point I'm going to ask you to read the portions that are marked the defendant Michael

Benjamin and I'll read the portions that are marked as detective Howard; okay?

Immediately after the foregoing exchange, the government re-enacted Benjamin's interview—with the prosecutor reading Benjamin's part—in which Benjamin acknowledged several times that, shortly after his argument with Smith over the debt, a call was made from Benjamin's cellphone to "the other guy":

BENJAMIN: No, I never, I never told him he was around there or nothing.

DETECTIVE HOWARD: Did you call though?

BENJAMIN: He ain't answer.

\*\*\*

DETECTIVE HOWARD: Is it the dude you called? I mean, you got his number.

BENJAMIN: Yeah, I know him.

\*\*\*

DETECTIVE HOWARD: Why you call the other guy?

BENJAMIN: Maybe I wanted something. Maybe the person that called him wanted something.

DETECTIVE HOWARD: Well, how coincidental is that. He gets called by you right after he talked to Kevin. And then not ten minutes later.

BENJAMIN: How you know I didn't call him before I seen Kevin?

The government elicited testimony from Detective Howard explicitly linking appellant to Benjamin just before they heard about Benjamin's calls to this "other guy," impermissibly priming the jury to implicate appellant in that call. In *Gray*, the government violated a defendant's Sixth Amendment right to confrontation when it "blatantly link[ed]" the defendant Gray to the redacted name "by asking whether Gray was arrested on the basis of information in [the redacted] confession as soon as the officer had finished reading the redacted statement." 523 U.S. at 193. In the same way, here, the government blatantly linked appellant to "the other guy" by prefacing the redacted interview with testimony that Benjamin knew appellant. This is precisely the type of extrinsic evidence of a defendant's identity that runs afoul of *Bruton*. The government attempts to distinguish *Gray* by noting that, by the time the government elicited Detective Howard's testimony preceding the introduction of the redacted interview, the jury had already heard testimony that Benjamin and appellant were acquaintances. But that argument undercuts the government's position. If the jury had already heard about Benjamin's familiarity with appellant, then eliciting the same testimony, without more, was seemingly a non sequitur that served no apparent purpose other than to impermissibly link appellant to the person referenced in the redacted interview. That is not to say that had Detective Howard's testimony more logically arisen in the course of his examination, the government would have satisfied its obligations under *Bruton*. At bottom, by eliciting testimony

that "blatantly link[ed]" appellant to the unnamed individual referenced in Benjamin's redacted interview just before that interview was read to the jury, the government violated appellant's Sixth Amendment confrontation right. *Gray*, 523 U.S. at 193.

Having found a constitutional error, we next consider whether the error was harmless under *Chapman*. 386 U.S. at 24. Under these circumstances, we hold that it was not.

The government's case against appellant centered on Smith's identification of appellant as his assailant. Smith made an in-court identification of appellant as his assailant at trial, and testified that he knew appellant well: He had known appellant for two-and-a-half to three years before the assault, considered him a friend, purchased drugs from him, owed him money, gave him car rides, visited appellant's apartment, and met appellant's mother. Smith also testified that, shortly before the assault, he saw appellant's black two-door Honda Accord parked at the corner, a car he had ridden in before.

On appeal, the government argues that any error was harmless because Benjamin's redacted statement was not "particularly incriminating" in that it did not,

in the government's view, implicate appellant in the assault on Smith or otherwise corroborate Smith's testimony about the incident. The question, however, is not whether Benjamin's statement to Detective Howard was particularly incriminating, but rather whether it is "reasonab[ly] possibl[e]" that the statement "might have contributed" to appellant's conviction. *Chapman*, 386 U.S. at 24. We conclude that it is.

The jury heard Smith testify that appellant and Benjamin knew each other (suggesting they coordinated in the Smith attack), and that appellant, regardless of any coordination, was motivated by a desire to collect on Smith's unpaid drug debt. But without Benjamin's statement to Detective Howard, the government's case turned entirely on Smith, whose testimony was uncorroborated, and whose unpaid and overdue drug debt to appellant gave him a strong bias and motive to accuse appellant falsely. It is reasonably possible that any doubts the jury might have had about Smith's testimony were assuaged by Benjamin's corroborating statement. When the jury heard that Benjamin called appellant after confronting Smith on October 20, the government was finally able to square the circle by corroborating Smith's description of the assault and his identification of appellant was his

assailant.[5]  Although the test for harmless error "is an exacting standard," *Ellis v. United States*, 941 A.2d 1042, 1048 (D.C. 2008), we conclude here that there is a "reasonable possibility" that the admission of the redacted interview and the manner in which the government introduced it "might have contributed to the conviction." *Chapman*, 386 U.S. at 24.

### B. Cross-examination of Kevin Smith

Appellant argues that the trial court violated his Sixth Amendment right to confrontation by prohibiting him from cross-examining Smith for two possible sources of bias: the October 11 assault by "Cory" and Smith's alleged community debts.  The government responds that appellant's proffer was insufficient to support cross-examination on the two theories, and further contends that, because appellant failed to advance a bias theory at trial, we should review the claim for plain error. Regardless of whether or not appellant raised the issue of bias cross-examination at trial, we conclude that, because appellant failed to proffer facts sufficient to support

---

[5]    Contrary to the government's assertion, the trial court's limiting instructions, *see supra* note 3, did not mitigate the potential prejudice as "we cannot accept limiting instructions as an adequate substitute for [appellant's] constitutional right of cross-examination. The effect is the same as if there had been no instruction at all." *Bruton*, 391 U.S. at 137.

his proposed cross-examination, the trial court did not err in limiting appellant's cross-examination of Smith.[6]

With respect to the relevance of the earlier assault, appellant failed to proffer facts that supported a genuine belief or well-reasoned suspicion that Smith was motivated to falsely accuse appellant in order to protect the actual assailant, who had allegedly assaulted him nine days prior. Appellant's trial counsel asserted that "there are reasons to believe [Smith] might be hiding that someone else attacked him," but failed to proffer any facts in support of those reasons. Further, as the government notes, it makes little sense that Smith was lying to protect Cory from the police, given that he had identified Cory to the police in connection to the October 11 attack. Contrary to appellant's assertion, the trial court did not err in assessing appellant's proposed cross-examination under *Winfield*, as that was how his proffer was presented. But even construed as a request for bias cross-examination, appellant

---

[6] Because appellant did not argue that his proposed cross-examination went to Smith's bias, the trial court reasonably construed appellant's proposal as relevant to a *Winfield* defense. We have, however, recognized the "conceptual similarity between bias cross-examination of a witness and a *Winfield* defense." *Ashby v. United States*, 199 A.3d 634, 661 (D.C. 2019) (citation and internal quotation marks omitted). In any event, because we see no error in the trial court's limitation of appellant's cross-examination of Smith, we need not decide whether appellant failed to raise the bias issue and review for plain error.

failed to proffer facts to establish a genuine belief or well-reasoned suspicion that Smith's incident with Cory was relevant to bias. *See Howard*, 978 A.2d at 1207.

Appellant's proffer with respect to Smith's alleged debts to other people in the community was similarly insufficient. When the trial court asked about the relevance of such evidence, appellant's counsel replied, "I don't have any[thing] more specific to offer." Benjamin's counsel contended that evidence of whether Smith "generally has other debts or conflicts in that area . . . could establish that someone else with the ability to assault him did." The trial court responded, "So to just ask him about other money that he might owe to other people I think is consistent with my ruling on the attacks. I don't think that there's a good faith basis at this time." Because appellant failed to proffer facts to support a genuine belief or a well-reasoned suspicion that the alleged debts were relevant to Smith's potential bias, the trial court did not abuse its discretion in limiting appellant's cross-examination.

## IV. Conclusion

We conclude that the redacted interview was impermissibly linked to appellant and thus failed to afford him the protections under the Confrontation Clause and Rule 14. Because the government failed to prove beyond a reasonable

doubt that the error did not contribute to the jury's verdict, the error was not harmless.  We also hold that the trial court did not abuse its discretion in limiting appellant's cross-examination of Smith for bias because he failed to proffer facts to support a genuine belief or a well-reasoned suspicion that the prior assault or alleged debts were relevant.  We reverse appellant's conviction and remand for a new trial.

*So ordered.*